Donald Anthony **MILLER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69084.

Court of Criminal Appeals of Texas, En Banc.

Sept. 16, 1987.

**384**

Catherine Greene Burnett, court appointed on appeal, Janet Morrow, of counsel on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Eleanor M. McCarthy, and Bert Graham, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

The record reflects that Donald Anthony Miller, who we will refer to as appellant, was indicted, tried, and convicted for murdering Michael Dennis Mozingo while committing or attempting to commit the aggravated robbery of Mozingo, which elevated the offense of murder to capital murder. See V.T.C.A., Penal Code, 19.03. After the jury answered the special issues submitted to it by the trial judge, pursuant to the provisions of Article 37.071, V.A.C.C.P., in the affirmative, the trial judge assessed appellant's punishment at death.

Appellant's attorneys present for review in the well written brief they filed in this cause twelve "grounds of error", which we recharacterize as "points of error" in order to comport with the present Texas Rules of Appellate Procedure, see Rule 210(b) and Rule 74(d). They are as follows: (1) "The [Trial] Court erred in excusing venire member Beverly Prince on the State's challenge for cause, because the record does not show that she was unfit to serve on a capital murder jury, [and] this error denied appellant his right to an impartial jury under the United States and Texas Constitution"; (2) "Appellant was denied a fair trial by the use of a videotaped reenactment of the automobile ride to the scene of the killing"; (3) "The trial court erred in refusing to allow Appellant to cross-examine the accomplice witness about the effect of his testimony of his knowledge that a co-defendant had received a life sentence when the accomplice was awaiting PSI [presentence investigation report] and assessment of punishment"; (4) "The trial court erred in failing

to give a cautionary instruction on the nature of the accomplices as defendants awaiting PSI and the risks that such status creates"; (5) "The trial court erred in denying a mistrial following an outburst in the courtroom by the deceased's family during the prosecutor's opening statement after the defense had asked to have all witnesses removed [from the courtroom]"; (6) "Numerous instances of improper jury arguments at guilt-innocence constituted cumulative reversible error despite lack of appellant's trial objection"; (7) "The trial court erred in allowing the prosecutor to impeach two of his key witnesses, over objection, thereby in effect bolstering their testimony"; (8) "Appellant was denied due process of law because the cumulative improper arguments at punishment rendered his trial unfair"; (9) "The trial court improperly limited appellant's right to make a timely bill of exceptions on the issue of jury tampering"; (10) "The trial court improperly limited appellant's right to make a timely bill of exceptions on the issue of a sleeping juror at trial"; (11) "The trial court erred in allowing the prosecutor to testify, in the guise of questioning, over objection, that Ray Mc Call could not be 'filed on' for other criminal acts to which he had confessed to the D.A. [District Attorney or prosecuting attorney]"; and (12) "The trial court erred in overruling appellant's request for an additional verdict form on the issue of parties".

Finding that none of appellant's points of error rise to the level of reversible error, we will expressly overrule each of them and affirm the trial court's judgment of conviction and sentence of death.

Although appellant does not challenge the sufficiency of the evidence as to either guilt or punishment, because of several of his points of error we will briefly summarize the facts of this case.

Much of the following comes from the testimony of Eddie Segura, who had prior to trial pleaded guilty to two counts of aggravated robbery arising out of the senseless killings that were committed by appellant and another co-defendant, Danny Woods, who received two life sentences for his participation in the crimes that were committed.

Mozingo and Kevin Whitt, his brother-in-law, two young men, much like many others then did each week, left High Point, North Carolina with approximately $6,000 in cash, in a 45' drop crane 18 wheeler tractor, with a 45' trailer, which were valued at approximately $18,000, loaded with furniture valued at approximately $23,000, to sell the furniture that they had purchased directly from the manufacturer in North Carolina. Unknown to Mozingo and Whitt, they then embarked on a trip to Houston from which they would not return alive. After they arrived in Houston, Mozingo and Whitt solicited business establishments and set up shop on the side of the road in order to sell the furniture. They were soon to meet, not persons who were interested in legitimately purchasing North Carolina furniture, but evil minded persons, appellant, Eddie Segura, and Danny Woods, who pretended to be legitimate purchasers of their furniture. Using this pretext, appellant, Woods, and Segura, who testified for the State, no doubt to save his hide, lured Mozingo and Whitt to Segura's house, where they were first robbed, then bound and gagged, and then placed in the back of their eighteen-wheeler. Ultimately, they were driven in an automobile to a location near Lake Houston where they were murdered by appellant and Woods, who shot them after they had pled for their lives. For several days, appellant, Segura, Woods, their girlfriends and friends, appeared to live the good life with money taken from Mozingo and Whitt. During this time, the culprits also unsuccessfully attempted to sell Mozingo and Whitt's truck, trailer, and the furniture, and actually gave to one of their friends Mozingo's watch and gave other friends of theirs some of the furniture that had been stolen from Mozingo and Whitt's trailer.

Testimony at the punishment hearing reflects that while in jail appellant, who was also shown to have been previously convicted and had a reputation for not being a peaceable and lawabiding person, unsuccessfully attempted to get another person, who

was not then incarcerated, to kill Segura, who was also not in jail at that time.

Appellant's counsel assert in their first point of error that "The Court erred in excusing venire member Beverly Prince on the State's challenge for cause, because the record does not show that she was unfit to serve on a capital murder jury. This error denied appellant his right to an impartial jury under the United States and Texas' Constitutions." Counsel rely upon *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), as their authority.

In *Witherspoon,* supra, the Supreme Court of the United States held that potential jurors may be excused for cause only when their opposition to the death penalty is such that they automatically would vote against a sentence of death or would be impaired in the task of determining the defendant's guilt. This holding was modified in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), which held that the proper federal constitutional test now for excusal of a prospective juror pursuant to a State's challenge for cause is whether the juror's views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

We disagree with appellant that the trial judge erred in sustaining the State's challenge for cause to Prince.

The record reflects that Prince, a female nurse by profession, initially told the trial judge that she was opposed to the penalty of death as punishment for a crime. However, she also told the judge that notwithstanding her feelings she "guessed" that could answer the special issues, see Art. 37.071, supra, based upon the evidence. However, she then told the prosecuting attorney that she could not ever answer the special issues in the affirmative knowing that this might cause the death penalty to be assessed, regardless of what the evidence might reflect. Prince also told the prosecuting attorney that she could not sit in judgment on someone else, "No, not really. Q: (By prosecuting attorney): ...

You are telling me your honest opinion, which is, that you are absolutely against the death penalty, and however horrible a case, you could never participate in giving an answer that might result in the death penalty, is that correct? A: That's correct."

Prince then told one of appellant's trial attorneys that notwithstanding her views, if convinced that the answers to the issues called for affirmative answers, she could and would answer them yes.

However, when further questioned by the prosecuting attorney, Prince answered the following question with "That's correct", "Q: Is it correct that you would be unable to answer them yes because you would know that the result would be that the guy would get death and that's against everything you morally believe and everything that you do in the hospital?"

Prince also told the trial judge that she would automatically answer the special issues in the negative, "to avoid the consequences of a yes vote", and, with the exception, "Maybe in the case of my mother," also told the trial judge she could not imagine any other case where she could answer the special issues in the affirmative.

Prince responded to appellant's trial attorney's following question as follows: "Q: And I gather what you are saying now, you are not really sure what you would do when you got there, are you? A: No, when I got there, regardless of those answers, I would commit nobody, you know, to sit in the electric chair or be shot with a needle to death."

When the trial judge granted the State's challenge, trial counsel for appellant stated for record purposes the following: "Your honor, please note our exception to the court's ruling."

The record also reflects that when the State first challenged Prince for cause, the prosecuting attorney merely stated: "We have a challenge for cause, your honor." Later, the prosecutor stated: "I would renew my challenge for cause, your honor." When the trial judge granted the challenge, he merely stated: "Challenge is granted."

Given the above, it astounds us that the State now argues that appellant failed to "specifically object" to the trial judge's excusal of Prince pursuant to the State's challenge for cause. As it is usually true that a good rule of law works both ways, if we agree with the State, we would be compelled to first find that the State's challenge for cause was sorely deficient, and then might find it necessary to sustain appellant's point of error. Given the voir dire examination of Prince, we decline to do either.

■ Although we agree with the State that in order to complain on appeal the defendant usually must properly, specifically, and timely object to the trial court's sustaining of a State's challenge for cause, see, for example, *Carter v. State*, 717 S.W. 2d 60, 76 (Tex.Cr.App.1986). After reviewing the entire voir dire examination of Prince, during which the primary issue about which she was questioned by the trial judge, the prosecuting attorney, and defense counsel was whether, given her views, she could answer the special issues based upon the evidence, knowing that the effect of affirmative answers might cause the death penalty to be imposed, we must disagree with the State's attorney that appellant's "exception" to the court's ruling did not preserve his claimed error for appellate review purposes.

■ When the ground for objection or complaint to the granting of a State's challenge for cause is obvious to the trial judge and opposing counsel, and there is no suggestion in the record that the parties did not know the basis and nature of the defendant's objection or complaint, a general objection or "exception" is usually sufficient to preserve the error. See *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr. App. 1977). Just recently, this Court, in *Turner v. State*, 635 S.W.2d 734 (Tex.Cr. App. 1982), was confronted with the situation where defense counsel merely stated "Note our objection" after the trial judge sustained the State's challenge for cause. Because it was so obvious from the record why the defendant in that cause complained in the trial court, this Court did not even bother to discuss whether the error

was perfected, and reversed that death penalty conviction. Also, in *Ex parte Bravo*, 702 S.W.2d 189, 193 (Tex.Cr.App.1986) (On State's motion for rehearing), where the record reflected that when the trial judge excused the prospective juror pursuant to the State's challenge for cause the defendant's attorney merely stated, "Note our exception to the ruling, please", this Court held that the record made it clear what the defendant's complaint was, that "Adams error" had been committed, and not only held that the error had been perfected but reversed that death penalty conviction. In this instance, we find and hold that the record clearly reflects that the error, if any, was properly and timely perfected for appellate review purposes.

■ However, given the totality of Prince's voir dire examination, we must also find and hold that her views on capital punishment made unmistakably clear that she would automatically vote in such a way on the special issues so as to prevent the sentence of death from being inflicted. Thus, her views on death as punishment for a crime would have "prevented or substantially impaired the performance of her duties as a juror", which was justifiable cause for the trial judge to excuse her pursuant to the State's challenge for cause. Also see *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Clark v. State*, 717 S.W.2d 910, 914–916 (Tex.Cr.App.1986). In so holding, we acknowledge that Prince's voir dire examination was concluded with the answer, "I don't know what I would do". However, we find that her earlier answers consistently left no doubt that she could not vote to inflict the death penalty in any case, with the exception of one where the victim was her mother. In *O'Bryan v. State*, 591 S.W. 2d 464, 473 (Tex.Cr.App.1979), this Court pointed out that "In such a circumstance, [the] venireman would be unable to serve as a juror because of his interest and prejudice in the case. Article 35.16, Vernon's Ann.C.C.P. The ability to consider capital punishment as a tool of vengeance by a person aggrieved by the loss of a family member is surely not within the contempla-

tion of *Witherspoon.* No other group would be more predisposed to vote for capital punishment than a jury composed of surviving members of the deceased victim's family. The situation in which [the venireman] could consider the imposition of death as a penalty is the situation which *Witherspoon* proscribes—the imposition of the death penalty by a 'hanging jury.'" The trial judge did not err in sustaining the State's challenge for cause.

Appellant's first point of error is overruled.

■ Appellant's attorneys on appeal claim in their second point of error that appellant "was denied a fair trial by the use of a videotaped reenactment of the automobile ride to the scene of the killing." We again must disagree with counsel.

The videotape, which appellate counsel describe as "a videotaped reenacted 'death ride'", shows a partial reenactment of the route the automobile in which appellant, Segura, and Woods, with their victims, Monzingo and Whitt, were riding, took to the location where appellant and Woods murdered them. It also showed pictures of the murder scene.

Appellate counsel concede that appellant's trial counsel stated into the record that "he had no objection to the video portion offered by the State", but claim on appeal that appellant should be able to belatedly object on appeal because the law on this subject has changed since his trial occurred. We disagree.

We first find and hold that because trial counsel failed to object to the showing of the video tape in the trial court his claimed error is not properly before this Court for review.

We further find that the videotape does not depict any staged, re-enacted criminal acts. We agree in principle with what the Fort Worth Court of Appeals stated in its opinion of *Lopez v. State,* 651 S.W.2d 413 (Tex.App.-Ft. Worth 1983), which was withdrawn, see *Lopez v. State,* 667 S.W.2d 624 (Tex.App.-Ft. Worth 1984), which original decision was reversed on other grounds by this Court, see *Lopez v. State,* 664 S.W.2d

85 (Tex.Cr.App.1985), upon which counsel rely, that "any staged, re-enacted criminal acts or defensive issues involving human beings are impossible to duplicate in every minute detail and are therefore inherently dangerous, offer little in substance and the impact of re-enactments is too highly prejudicial to insure the State or the defendant a fair trial." In this instance we find that the videotape that the jury saw does not come within the above prohibition. The videotape in this instance was merely a series of pictures of the route taken to where the victims were murdered by appellant and Woods, and pictures of the scene itself. Furthermore, as appellate counsel admit, "[Segura, one of appellant's co-defendants,] had [previously in his testimony] described the route in great detail, giving names of streets and descriptions of traffic, buildings and time of night. He had used a map, a diagram and aerial photographs. The jury saw photos of the crime scene itself." (Page 16 of appellant's brief.) We cannot say that the videotape was either inherently or highly prejudicial to appellant. Also see *Buxton v. State,* 699 S.W.2d 212 (Tex.Cr.App.1985).

Appellant's second point of error is overruled.

Appellant's counsel assert in their third point of error that "The Trial Court erred in refusing to allow appellant to cross-examine the accomplice witness [Segura] about the effect on his testimony of his knowledge that a co-defendant [Woods] had received a life sentence when [Segura] was awaiting PSI [presentence investigation] and assessment of punishment." We disagree.

Woods, appellant's co-defendant, did not testify at appellant's trial.

The record reflects that the jury was made aware of the fact that Segura had pled guilty to two counts of aggravated robbery arising out of the robberies, kidnappings, and murders of Mozingo and Whitt, and at that time he had not been sentenced because sentencing had been delayed in order for the trial judge, who is the same trial judge in this cause, to obtain

a presentence investigation report on Segura.

Appellant's counsel claim that the trial judge erred when he refused to permit appellant's trial counsel to question Segura about the fact that "Segura was aware that Woods had pleaded guilty to two counts of capital murder in exchange for concurrent life sentences since Segura agreed that such knowledge affected his testimony at Appellant's trial." (Page 20–21 of appellant's brief.) We disagree.

Segura testified that he and the prosecution had not entered into any "deal" or "guarantee" in exchange for his testimony, regarding what his expected punishment might be, although like anyone who might find themselves in a like position he "hoped" he would get a "light sentence." This record does not reflect what punishment Segura actually received. The jury was not made aware of the punishment, life imprisonment on two cases, Woods had received.

Just recently, in *Hurd v. State*, 725 S.W. 2d 249, 252 (Tex.Cr.App.1987), this Court pointed out the following: "The practice of exposing a witness' motivation to testify against a defendant is a 'proper and important function of the constitutionally protected right of cross-examination.' *Delaware v. Van Arsdale*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In exercising this right, a defendant is allowed great latitude to show any fact which would tend to establish ill feeling, bias, motive, and animus on the part of the witness testifying against him. *Simmons v. State*, 548 S.W.2d 386 (Tex.Cr.App.1977); *Castro v. State*, 562 S.W.2d 252 (Tex.Cr. App.1978); and *Parker v. State*, 657 S.W. 2d 137 (Tex.Cr.App.1983)." Also see *Carmona v. State*, 698 S.W.2d 100 (Tex.Cr. App.1985); *Spriggs v. State*, 652 S.W.2d 405, 407–408 (Tex.Cr.App.1983); *Rovinsky v. State*, 605 S.W.2d 578, 580 (Tex.Cr.App. 1980); *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); *Burkhalter v. State*, 493 S.W.2d 214 (Tex.Cr.App.1973). Appellant's trial counsel was never prevented from establishing this. It was also pointed out in *Hurd*, supra, that "This right to

confront witnesses does not prevent a trial court from imposing some limits on the cross-examination into the bias of a witness. Trial courts retain some discretion in deciding how and when bias may be proved, and what collateral evidence is material for that purpose. *Spriggs v. State*, [652 S.W.2d 405] supra, and *Green v. State*, 676 S.W.2d 359 (Tex.Cr.App.1984). In exercising this discretion, the trial courts have the latitude to impose reasonable restrictions on such cross-examination. These restrictions may be based on concerns such as 'harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or marginally relevant.' *Delaware v. Van Arsdale*, supra, 106 S.Ct. at 1435. The trial court's discretion in this area[, however,] has limits. For example, a trial court may not restrict a defendant to any one method in showing any fact which would tend to establish bias. *Harris v. State*, 642 S.W.2d 471 (Tex.Cr.App.1982). Also, it is not within a trial court's discretion to prohibit a defendant from engaging in 'otherwise appropriate cross-examination designed to show a protypical form of bias on the part of the witness.' *Delaware v. Van Arsdale*, supra, 106 S.Ct. at 1436." (252). Also see *Cloud v. State*, 567 S.W.2d 801 (Tex.Cr. App.1978); 2 *Wharton's Criminal Evidence*, § 457 (13th ed. 1972).

■ Thus, it is always proper through cross-examination to place a testifying co-defendant in his proper setting as to what might motivate him in testifying for the State and against the accused. Therefore, evidence that a witness who testifies against the accused has pending criminal charges against him, or is awaiting sentencing as here, is always admissible against him in order to show a possible motive for testifying for the State and against the accused. *Bates v. State*, 587 S.W.2d 121, 123 (Tex.Cr.App.1979).

■ Generally speaking, for obvious reasons, it is not permissible to show that another non-testifying person, who has been jointly or separately indicted for the same offense as the accused, has been either convicted or acquitted. See the cases

collected under *West's Criminal Law Key Number 422(2)*, Woods did not testify for the State in this cause.

■ In this instance, we cannot find a sufficient connection between the sentences that the co-defendant Woods received and what sentences Segura might receive. There is simply no evidence that might support the inference that Segura's motive to testify stemmed from the possibility that he might receive lesser sentences than the sentences Woods received. We also find that any rational trier of fact could have easily drawn the inference that Segura's vulnerable status as a person awaiting punishment furnished a motive for his testifying and also could have inferred from Segura's testimony that he was under extreme pressure in testifying for the State and that the better he testified for the State this might affect what punishments the trial judge would eventually assess. Therefore, given the above, we cannot state that appellant was not permitted to explore the possibility that Segura was testifying for the State and against him in order that he might get a light sentence. Also see *Carmona*, supra, and *Jackson v. State*, 552 S.W.2d 798, 801 (Tex.Cr.App.1976). In light of what the jury heard as to Segura's potential bias, we cannot hold that the trial court abused its discretion in excluding the proffered collateral and highly speculative testimony that appellant's trial counsel sought to have admitted before the jury.

Appellant's third point of error is overruled.

■ Appellant's counsel claim in their fourth point of error that "The trial court erred in failing to give a cautionary instruction on the nature of the accomplices as defendants awaiting PSI and the risks that such status creates." This contention pertains not only to Segura, see *ante*, but to other State's witnesses who became involved after the murders of Mozingo and Whitt had been committed by appellant and Woods.[1] Appellant's counsel does not assert or claim that he was prevented from

"unmasking" any "deals" that might have been made with those witnesses, or that he was prevented from showing the jury that these witnesses were also under extreme pressure in testifying for the State.

Although appellant's counsel advocates that "this Court [should] take this opportunity to adopt a prophylactic rule requiring trial judges to give juries a cautionary instruction when the facts reveal that critical prosecution witnesses are in a 'limbo' status, such as when they are awaiting assessment of punishment," we have yet to find where counsel has presented a proposed instruction that would not run afoul of the long standing rule of law in this State that a trial judge must not, contrary to federal trial judges, comment on the evidence. We decline today to adopt counsel's suggestion.

We also observe that appellant's counsel concede that trial counsel did not request such an instruction nor did he object to the failure of the court's charge to contain such an instruction.

Appellant's point of error number four is overruled.

Appellant's counsel assert in their fifth point of error that "The trial court erred in denying a mistrial following an outburst in the courtroom by the deceased's family during the prosecutor's opening statement after the defense had asked to have all witnesses removed." We disagree.

Although we disagree with counsel that the trial judge should have declared a mistrial, we do agree with counsel in the principle that conduct from bystanders or friends or relatives of the victim or the accused which interfere with the normal proceedings of a trial must not be tolerated in a court of law, and the parties and the trial judge should always be on the alert to see that such misconduct does not occur during a defendant's trial. Such offensive conduct, of course, always subjects the offending party to punishment for contempt of court, and the trial judge should always appropriately deal with any person who intentionally disturbs the trial proceedings.

---

1. These persons were Jimmy Douglas and Ray McCall.

However, misconduct of bystanders or friends or relatives of the victim or the defendant, even though it might temporarily interfere with the normal proceedings of the trial, will not necessarily result in reversible error. It is incumbent upon the defendant to show a reasonable probability that the conduct interfered with the jury's verdict. See *Landry v. State*, 706 S.W.2d 105, 112 (Tex.Cr.App.1985). In this instance, we cannot conclude from this record that such has been established.

The record reflects that during the opening statement by the prosecutor, a relative of one of the murdered victims, Mozingo, who was not then scheduled to testify during appellant's trial, may have conducted himself in an offensive and contemptuous manner by attempting to get to appellant in the courtroom, "by going over the rail." Out of the presence of the jury, the trial judge overruled appellant's motion for mistrial and ordered the offending person to remain outside the courtroom for the remainder of the trial, which we assume he did, and also admonished all persons in the courtroom "not to show any emotions or any outburst of emotions during the testimony of this trial. I'm not going to allow that behavior to interfere with a fair trial of this defendant." One spectator requested and was granted permission to leave the courtroom. Appellant's counsel did not ask the trial judge to instruct the jury to ignore what might have occurred in the courtroom. Indeed, appellant does not assert that the jury ever saw or had any knowledge of the above "outburst", nor does the record so reflect. Based upon this record, it is absolutely unclear just what, if anything, the jury might have seen or heard.

It was incumbent upon appellant to establish, by competent evidence, the probability of injury to himself as a result of what had occurred during the prosecutor's opening statement to the jury. We find and hold that appellant has failed to show that any prejudice resulted from the above "outburst". The record is simply insufficient to permit us to sustain appellant's contention that he was denied a fair trial because of the above "outburst".

Appellant's fifth point of error is overruled.

In their sixth point of error, appellant's counsel assert: "Numerous instances of improper jury arguments at guilt-innocence constituted cumulative reversible error despite lack of appellant's trial objection." Counsel candidly admits that "Possibly none of the three complained of arguments would compel reversal, since not objected to, if standing alone." (Page 38, appellant's brief). However, counsel argues that "their cumulative effect denied Appellant a fair trial." (Page 38, appellant's brief). We disagree.

Counsel acknowledges the general rule that there must usually be a timely, proper, and specific objection to the prosecutor's complained about jury argument in order for a defendant to preserve the complaint for appellate review purposes. See, for example, *Borgen v. State*, 672 S.W.2d 456, 457 (Tex.Cr.App.1984); *Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982); *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr.App. 1979); *Duffy v. State*, 567 S.W.2d 197, 206 (Tex.Cr.App.1978); *Miller v. State*, 566 S.W.2d 614, 619, 621 (Tex.Cr.App.1978); *Cain v. State*, 549 S.W.2d 707, 715 (Tex.Cr. App.1977). However, an exception to the general rule is that improper argument may present a Fourteenth Amendment due process claim if the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Also see *Romo v. State*, supra; *Smith v. State*, 541 S.W.2d 831 (Tex.Cr. App.1976); *Rodriguez v. State*, 530 S.W.2d 944 (Tex.Cr.App.1975).

Two of the unobjected to arguments about which complaint is now made on appeal follow:

The judge says that Edward Segura is an accomplice, and that is true as a matter of law. And I want you to understand that everything in this charge is not because the judge is giving his opinion on anything, but because it's requested by either side, and if there's any reasonable opinion on anything, but because it's re-

quested by either side, and if there's any reasonable opinion, it could be such, the judge, by law, has to put it in the charge and have the jury decide and so he puts it in the charge; you decide whether Ray Mc Call is an accomplice. And I tell you, all the evidence you heard and to when you read that definition of an accomplice, he is not.

Because that young man [Mc Call], at twenty-one years of age, sat on that witness stand that you saw for approximately three hours and almost cried to testify against his best friend, almost a member of the family. And you know, he wasn't lying. Because he didn't want to testify, and because he, too, could have gotten out of it, if it wasn't the truth, by saying someone else did it. But, he finally, on September the 3rd, decided to tell all the truth and not cover Donny [appellant] because he was already in trouble.

And how is it, if Mc Call is such a liar, that he can produce this—I mean, am I holding something here? Did I miss something during this trial? Is this really a figment of my imagination?

The third complained of argument consists of 8½ letter size pages. We find that to set it out would unnecessarily elongate this opinion, and decline to do so for this reason.

 Although we find that several of the statements that the prosecuting attorney made in his argument were highly improper, and do not come within the general areas of proper jury argument as set out in, for example, *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980), we also find that an instruction by the trial judge would have been sufficient to cure any error. See, for example, *Logan v. State*, 698 S.W.2d 680 (Tex.Cr.App.1985). Reversible error occurs only when statements to the jury, either individually or collectively, are so extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision, see *Duffy v. State*, supra, that they deprive the accused of a fair and impartial trial. Given the record as a whole, and without an objection, we cannot conclude that the prosecu-

tor's statements, either singularly or collectively, although in several instances erroneous, were so prejudicial as to reflect a violation of due process or due course of law to the extent that they deprived appellant of a fair and impartial trial.

Appellant's sixth point of error is overruled.

Appellant's counsel contend in their seventh point of error that "The trial court erred in allowing the prosecutor to impeach two of his key witnesses, over objection, thereby in effect bolstering their testimony." Again, we must disagree with counsel.

The record reflects that over objection the prosecuting attorney was permitted to ask one of his witnesses, whether when he, the prosecutor, had previously spoken with the witness, that he, the witness, had not told him, the prosecutor, "all of the facts at one time that you've just related in this courtroom", and, as to another of his witnesses, whether he, the witness, had left out in his prior statements that he gave to law enforcement officials items about which he had testified to in court. The witnesses testified that indeed this had occurred.

We are unable to understand how the above constitutes either impeachment or bolstering, as appellant's counsel assert. Generally, "bolstering" occurs when a party is allowed to introduce a prior consistent statement of an unimpeached witness to enhance the witness' credibility, see, for example, *Pless v. State*, 576 S.W.2d 83 (Tex.Cr.App.1978). "Impeachment" usually occurs when a party uses a prior inconsistent statement of a witness to attack the witness' credibility. See, for example, *Jackson v. State*, 516 S.W.2d 167, 175 (Tex. Cr.App.1974); *Brown v. State*, 475 S.W.2d 938, 952 (Tex.Cr.App.1971). In this instance, we cannot conclude that the witnesses' testimony was either impeached or bolstered by the prosecutor's questioning.

Appellant's seventh point of error is overruled.

Appellant's counsel assert in their eighth point of error that he "was denied due

process of law because the cumulative improper arguments [of the prosecutor] at punishment rendered his trial unfair." Counsel concede that either no objections or extremely general objections were made to the complained about jury arguments. We have carefully examined the complained about jury arguments, which we do not set out in this opinion because to do so would only unnecessarily elongate this opinion, and although we find that some of them might be considered highly improper, we conclude that, either individually or collectively, in light of the record as a whole, and without a proper and timely objection, they were not so prejudicial as to reflect a violation of due process or due course of law to the extent that they deprived appellant of a fair and impartial trial.

Appellant's eighth point of error is overruled.

■■■ Appellant's counsel claim in their ninth point of error that "The trial court improperly limited appellant's right to make a timely bill of exceptions on the issue of jury tampering." Once again we must disagree with counsel.

The record reflects that mid-way through the guilt-innocence stage of the trial, a hearing was conducted by the trial judge on appellant's motion for mistrial based on jury tampering. Several of the jurors testified at that time that they had received telephone calls at their residences, usually during the early morning hours, in which they were told by an unknown person, inter alia, "Don't convict Donny Miller [appellant] on the murder or you're dead"; "If Miller doesn't get life, you're dead"; "If Miller doesn't get death, you're dead"; "Your family is going to die". There is no evidence in the record that appellant himself had anything to do with anyone making the telephone calls or making the threats. Although the jurors who testified testified that these statements concerned them, each also stated that the telephone calls would not affect his verdict or his deliberations. The trial judge overruled appellant's motion for mistrial, but then ordered the jurors sequestered, during which it was shown that a bomb threat

caused the hotel in which the jurors were housed to be evacuated. After the judge ordered the jurors sequestered, appellant's trial counsel then attempted to recall the jurors for questioning for his informal bill of exception but the trial judge refused to permit him to make a bill at that time. However, after the jury returned its affirmative answers to the special issues, the trial judge then permitted counsel to make his bill. The testimony of the jurors who testified on appellant's bill comports in all things with their previous testimony, namely, that anything that had occurred did not affect their verdict or their deliberations.

As we understand appellant's counsel's argument under this point of error, the gist of their complaint is that the trial judge committed reversible error when he did not permit appellant's trial counsel to perfect his informal bill of exception when the event was then viable and fresh on the minds of the jurors. Appellate counsel argue: "By the time Appellant was allowed to ask the questions he had wanted to ask two weeks earlier, the jury had a verdict to defend. It strains credulity to assume that once the death penalty had been returned a juror would then testify that his decision was in part based on the fact that he had been threatened with death for his failure to return such a verdict. The time of the hearing on the Bill of Exceptions, the juror had already complied with the demand contained in the threat."

This Court, however, has long held that "where full opportunity to perfect his bill is thereafter afforded, the refusal of the request of appellant to retire the jury and hear the testimony at the time it is offered and rejected is not reversible error. *Salter v. State*, 159 Tex.Cr.R. 482, 264 S.W.2d 719; *Weeks v. State*, [161] Tex.Cr.R. [202], 275 S.W.2d 684." *Davidson v. State*, 288 S.W.2d 93, 97 (Tex.Cr.App.1956).

Therefore, we find and hold that in view of the trial judge's action in later permitting appellant to present testimony for the purpose of perfecting his informal bill of exception no injury is presumed to have occurred because the trial judge did not permit such to take place earlier. Appel-

lant, other than contending that he did not get to examine the jurors "when the event was fresh on their minds", does not claim that he was injured by the trial judge's action in letting appellant perfect his informal bill of exception when he did. The court's refusal to hear the testimony at the time it was originally sought does not present reversible error.

Appellant's ninth point of error is overruled.

 Appellant's counsel assert in their tenth point of error that "The trial court improperly limited appellant's right to make a timely bill of exceptions on the issue of a sleeping juror at trial." We again must disagree with counsel.

The record reflects that appellant's trial counsel sought a mistrial on the ground that one of the jurors had been asleep during part of the trial. It appears that another juror, who was seated next to the "sleeping juror", thought the juror was sleeping because "his eyes were closed and his head was falling over to the side," and brought this to appellant's trial attorney's attention by hand signals. Counsel then requested the trial judge to call the "observing juror" to testify on this point, but the trial judge denied the request at that time. The "sleeping juror," however, was permitted to testify at that time, and he testified that he had not gone to sleep. After the jury answered and returned to the trial judge its answers to the special issues, the trial judge then permitted counsel to call the "observing" juror, who testified that her neighbor "had his head laying back against the wall and his eyes closed." It appeared to her that he was sleeping and she wondered whether she should "punch him", because she felt it was "embarrassing for the whole jury", but did not do so, but kept "an eye on him" for the rest of the trial. The "observing" juror stated that she could not positively state as a fact that her neighbor had actually gone to sleep during the trial.

We believe that what we have previously stated, see *ante*, when we addressed appellant's ninth point of error, is sufficient to show that the trial judge did not reversibly err in belatedly holding the hearing.

Appellant's tenth point of error is overruled.

 In their eleventh point of error, appellant's counsel contend that "The trial court erred in allowing the prosecutor to testify in the guise of questioning, over objection, that Ray Mc Call could not be 'filed on' for other criminal acts to which he had confessed to the District Attorney." Once again we must disagree with counsel.

The record reflects that Mc Call, although not a participant or witness to the murders of Mozingo or Whitt, became a State's witness, albeit a reluctant one, when it was learned that appellant had made damaging admissions to him concerning the murders of Mozingo and Whitt, to which he testified at appellant's trial. At the time of appellant's trial, Mc Call had pled guilty to four felony offenses and was then awaiting assessment of punishment. He, too, testified that he had no "deals", "agreements", or "guarantees" with the prosecuting attorney in exchange for his testimony. On cross-examination, Mc Call admitted that he had also stolen a truck (not Mozingo and Whitt's) and had knowingly received some of the furniture that had been stolen from Mozingo and Whitt's trailer, but no criminal charges were filed for those offenses. On redirect examination, the prosecutor, without objection, brought out the fact that Mc Call was aware that he, the prosecutor, "don't know any of the facts of it or the places or the dates or the people from whom any truck was stolen"; was aware that "no criminal charges can be filed against anybody for any crime of a crime unless the elements of that crime can be met in a legal indictment, such as the date, the place, what was stolen, and so forth"; and, over objection, testified that he was aware that "as you know, after conferring with your attorney, that even if I wanted to file additional charges against you for any alleged auto theft, that I would be unable to, not having that information."

Although we do not approve the form of the questioning by the prosecuting attor-

ney, for obvious reasons, we must agree with the State's attorney on appeal that "When the witness was cross-examined by the defense regarding the charges that had not been filed against him [Mc Call], he was entitled to explain the reasons therefore on redirect examination ... The trial court did not abuse its discretion in allowing the complained of examination ... no reversible error is shown ..."

Appellant's eleventh point of error is overruled.

 Appellant's attorneys on appeal, in their twelfth point of error, assert that "The trial court erred in overruling appellant's request for an additional verdict form on the issue of parties." We again must disagree with counsel.

The record reflects that appellant's request that the jury be given a separate verdict form to cover the "law of parties" at the guilt stage of the trial was denied by the trial judge. Appellant's complaint does not concern the punishment stage of his trial. In *Cuevas v. State*, 742 S.W.2d 331 (Tex.Cr.App. 1987), this Court held that the refusal by the trial court to give a special instruction on the law of parties at the punishment stage of the trial, "In light of the wording of special issue number one, the application of the law of parties to the facts of the case at the guilt phase, and the argument of counsel for appellant and the State regarding the law and the evidence, no actual harm accrued to appellant Accordingly, we hold that error, if any, in refusing the requested instruction was harmless error." (Page 42 of the Slip Opinion.)

In this instance, the jury was instructed at the guilt stage of the trial, inter alia, that it could convict appellant of capital murder if it found that he acted alone or as a party. The jury's verdict reflects that the jury found appellant "guilty of the offense of capital murder."

Article 37.07, V.A.C.C.P., provides that the verdict in every criminal action must be general, and this Court has held that where an indictment contains but one count charging a single offense, as in the instant case, a general verdict of "guilty" is sufficient.

See *Ellison v. State*, 154 Tex.Cr.R. 406, 227 S.W.2d 545, 547 (1950). In *Demouchette v. State*, 731 S.W.2d 75 (Tex.Cr.App.1986), this Court also held that it was not error to refuse to give a very similar, although more detailed, instruction as the one requested by appellant in this cause.

This Court in *Cuevas*, supra, in rejecting the defendant's contention that the requested instruction that he claimed should have been given, also held: "The trial court's charge 'distinctly set[s] forth the law applicable to the case' in compliance with Art. 36.14, V.A.C.C.P. The trial court did not err in refusing to give appellant's requested charge."

Appellant's twelfth and final point of error is overruled.

Having carefully reviewed each of appellant's points of error, and finding that none contain reversible error, the trial court's judgment of conviction and sentence of death are affirmed.