Affirmed and Memorandum Opinion filed August 31, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00060-CR



 

Frank Christopher Sustaita, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 54th District
Court

McLennan County,
 Texas

Trial Court Cause No. 2007-1314-C2



 

MEMORANDUM  OPINION

 

            A jury found
appellant Frank Christopher Sustaita guilty of murder and sentenced him to
fifty-five years in the Institutional Division of the Texas Department of
Criminal Justice.  Appellant raises the following issues on appeal: (1) the
trial court erred in overruling appellant’s objection to the State’s alleged misstatement
of law during its closing argument and (2) the evidence of appellant’s intent
to commit the offense is factually insufficient.  We affirm.

I.  Background

            Appellant and his
girlfriend, Jennifer, lived with her aunts, Renee Alderete and Jennie Macias,
and her cousins.  Appellant and Jennifer shared the back bedroom of the house. 
On June 2, 2007, appellant and Jennifer returned to the house after visiting
his family.  Jennifer reportedly walked into the house, slammed the door behind
her, and said, “I swear, I hate him.”  Afterwards, appellant entered the
house.  

            That same day,
Alderete and Macias watched Jennifer pace back and forth from the back to the
front of the house with appellant following behind her.  According to them, she
“seemed to be pretty upset.”  Later, Appellant and Jennifer retired to their
bedroom where Jennifer took a nap.  While they were in there, Alderete and
Macias heard two loud noises.  Thereafter, appellant ran out of the bedroom and
yelled, “I didn’t do it.”  

            Alderete and
Macias ran to Jennifer, who was bleeding profusely from her head.  Alderete
left the room to call 9-1-1.  Macias took Jennifer’s hand and said, “I need to
know if he did this to you . . . . if he did, . . . I need you to squeeze my
hand twice.”  According to Macias, Jennifer squeezed her hand twice.  At that
point, appellant ran to the dresser, grabbed something, and ran out of the
house.  Alderete reentered the room while still on the phone with 9-1-1, and
Macias told Alderete that appellant shot Jennifer twice.  

            An ambulance took
Jennifer to Hillcrest Hospital.  There, an emergency room physician retrieved a
bullet from her skull.  Due to the severity of Jennifer’s injuries, she was
life-flighted to Scott and White Hospital in Temple, Texas.  She died eleven
days later.

            At trial, Dr.
Randall Smith, a trauma surgeon at Scott and White Hospital, testified that a
bullet entered Jennifer’s forehead and exited above her right ear.  He also
testified that Jennifer had what looked like another entrance wound in her
right eyebrow, but he could not conclusively determine how many times she was
shot.  Dr. Jill Urban, a forensic pathologist at the Dallas County Medical
Examiner’s Office, testified “that [Jennifer] died as a result of gunshot wound
or wounds of the head.”  Dr. Urban could not discern with certainty how many
times Jennifer was shot because many of the injured areas had been removed
during surgery.

            Frank Sustaita,
appellant’s father, testified that appellant ran to his house and asked him to
hide him.  He testified that appellant told him two different versions of how
Jennifer was shot.  At one point, appellant told him, “the gun went off.  It
was an accident.  I did not do it.”  At another point, appellant told him that
Jennifer “had been trying to commit suicide all day.”  

            Frank also
testified that appellant was very familiar with guns and carried them for
protection.  He personally taught appellant how to load and handle a gun and
about gun safety generally.  He told his son always to have the safety on,
never to leave a loaded gun, and never to point a gun at people and pull the
trigger—even if unloaded—because doing so was dangerous.  

            Waco Police
Officer Fernando Flores testified he went to Frank’s home to arrest appellant. 
At that time, appellant told him that Jennifer was shot when he pulled his gun
out of his waistband and the gun went off.  

Waco Police Officer Michael Alston testified that he
interviewed appellant at the police station, and that appellant told him multiple
versions of how Jennifer was shot.  At first, appellant told him “it was an
accident.”  Jennifer was lying on the bed, appellant pulled his gun out of his
waistband, and it went off.  Officer Alston told appellant that, if that
account were true, he would have expected that Jennifer’s wounds would have had
different entry and exit paths.  

At that point, according to Officer Alston, appellant
changed his story and told him that “he pulled the pistol out of his pants[,] .
. . pointed it at [Jennifer,] and pulled the trigger.”  He stated his actions
were part of a game he and Jennifer would play.  He and Jennifer “would point
the pistol at each other . . . and they would pull the trigger with it loaded
and the safety on.”  Officer Alston asked who could verify that they played
this game, and appellant did not have an answer.  

Appellant’s cousin testified he had seen Jennifer and
appellant play the game three times, but the version of the game varied
significantly.  Appellant’s cousin testified that of those three times, he
never saw the game played with bullets in the gun, neither person ever pointed
the gun at the other’s head, and neither person ever pulled the trigger. 
Rather, appellant’s cousin testified that they would point the pistol at each
other and say, “I’ll pistol whip you.”  The cousin testified appellant carried
the gun for protection when riding with his friends.          

            Macias testified
that in the several weeks prior to the shooting, “[t]hings hadn’t looked right
between [Jennifer] and [appellant].”  Macias testified that she had started to
notice changes in Jennifer and appellant’s relationship, and she was concerned
about appellant’s possessiveness.    

            The court charged
the jury on murder and manslaughter.  The jury subsequently convicted appellant
of murder, and he was sentenced to fifty-five years’ imprisonment.  This appeal
ensued.

II.  Discussion

A.        Improper Jury
Argument Claim

In his first issue, appellant contends that during
the State’s closing argument, the State made several improper statements to the
jury about the correct procedure for considering a lesser-included offense. 
Specifically, appellant takes issue with the State’s statements during argument
that the jury could not consider the lesser-included offense of manslaughter
unless the jurors unanimously found appellant not guilty of murder.  Before
closing arguments, the court read the following charge in relevant part:

Unless you so find beyond a reasonable doubt, that the
Defendant is guilty of murder under the instructions given you herein, or if
you have a reasonable doubt thereof, you will acquit the Defendant
of murder and next consider the lesser included offense of manslaughter.[1]

 

During its closing argument,
the State made the following allegedly improper arguments:

[Counsel for the State]: [Y]ou can’t even
consider manslaughter until every last one of you agrees he’s not guilty of
murder.  And it is only until that time—

[Counsel for Appellant]: Your Honor, that’s a misstatement
of the law.  I’m going to object that that’s a misstatement of the law.

The Court: Overruled.

[Counsel for the State]:  It is only at that point that you
can even move to manslaughter.  Okay.  It says right here.  Unless you so find
beyond a reasonable doubt that the Defendant is guilty of murder under the
instructions given herein, or if you have a reasonable doubt thereof, you will
acquit the Defendant of murder and next consider the lesser included offense of
manslaughter.  So you don’t get to manslaughter until all of you say not
guilty of murder.[2]

 

Then, during
rebuttal, the State added:

 

[Counsel for the State]: You must find that he is not
guilty of murder to consider the lesser included [offense] of recklessly
causing her death of manslaughter.  And that is a lesser included, a
second-degree felony, as we talked about in voir dire.  So you have to
unanimously believe that he did not murder her before you consider that
offense.[3]

 

Counsel for appellant
objected to the first alleged misstatement, but did not object to the second or
third.

To complain on appeal about
an improper jury argument,[4] a defendant
must object to the argument at trial and pursue his objection to an adverse
ruling.  Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Johnson
v. State, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  Additionally, under current Texas law, a defendant must object each
time an improper argument is made, or he waives his complaint, regardless of
how egregious the argument.  Valdez v. State, 2 S.W.3d 518, 521–22
(Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); Wilson v. State, 179
S.W.3d 240, 249 (Tex. App.—Texarkana 2005, no pet.) (citing Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).  Here, appellant did not object
each time the argument was made.  Therefore, under existing Texas law, we are
compelled to conclude he has waived his right to complain about the arguments
on appeal.[5]  See
Valdez, 2 S.W.3d at 521–22.

Accordingly, we overrule appellant’s first issue.

B.        Factual
Insufficiency Claim

Appellant
contends the evidence that he had the requisite intent or knowledge to commit
murder is factually insufficient.  We disagree.

In a factual-sufficiency review, we examine the
evidence in a neutral light.  Grotti v. State, 273 S.W.3d
273, 283 (Tex. Crim. App. 2008). Only one question is to be answered in a factual-sufficiency review:  Considering all of the
evidence in a neutral light, was the jury rationally justified in finding guilt
beyond a reasonable doubt?  See id.  Evidence can be factually
insufficient in one of two ways: (1) if the evidence supporting the verdict is
so weak that the verdict seems clearly wrong and manifestly unjust; and (2) if
the supporting evidence is outweighed by the great weight and preponderance of
the contrary evidence so as to render the verdict clearly wrong and manifestly
unjust.  See id.  

We cannot reverse a
judgment for factual insufficiency if the greater weight
and preponderance of the evidence actually favors conviction.  See id.  Thus,
although an appellate court has some ability to second-guess the jury to a
limited degree, a factual-sufficiency review should remain
deferential to the jury’s role as the sole judge of the weight and
credibility given to any witness’s testimony, with a
high level of skepticism about the jury’s verdict required before a reversal
can occur.  See id.

Appellant
contends there is no direct evidence that he intended to kill Jennifer
or knew that her death was certain to result.  However, as with virtually any
other issue in a criminal case, intent may be proven by circumstantial
evidence.  See Jordan v. State, 707 S.W.2d 641, 644–45 (Tex. Crim. App.
1986).  We may infer a defendant’s intent from his actions, words, and
conduct.  Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). 
Circumstantial evidence is as probative as direct evidence in establishing the
guilt of the actor, and circumstantial evidence alone may be sufficient to
establish guilt.  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007).  Thus, it is unnecessary for every fact to point directly and
independently to the defendant’s guilt; rather it is sufficient if the finding
of guilt is supported by the cumulative force of all the incriminating
evidence.  Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). 


Here, we
cannot say the proof of guilt is so obviously weak that the verdict must be
clearly wrong and manifestly unjust.  See Grotti, 273 S.W.3d at 283.  Similarly,
we also cannot say the proof of guilt, although legally sufficient, is greatly
outweighed by contrary proof.  See id. 

A number
of factors support the jury’s verdict. Macias testified that the
couple’s relationship had deteriorated around the time of the shooting, and Macias
was concerned about appellant’s possessiveness.  Alderete also testified that
Jennifer “seemed to be pretty upset” on the day of the shooting and had stated,
“I swear, I hate him”—apparently referring to appellant. 

Appellant’s
actions after he shot Jennifer are also telling.  First, he ran out of the
bedroom and blurted out, “I didn’t do it.”  Appellant ultimately fled the
scene, ran to his father’s house, hid the gun in his father’s garage behind a
pallet, and asked his father to hide him. In subsequent questioning, appellant
told several different versions of how the shooting occurred: that Jennifer had
tried to commit suicide; that the gun had gone off accidentally; and that
appellant had aimed at Jennifer and pulled the trigger as part of a game.

            Clearly,
there is more than adequate circumstantial evidence from which a jury could
infer appellant’s intent and guilt.  Evidence of appellant’s deteriorating
relationship with Jennifer, appellant’s sophistication with guns, his flight,
and his changing versions of events are all consistent with the finding of
guilt.   Accordingly, after reviewing the record in a neutral light, we cannot
say the proof of guilt is so obviously weak that the verdict must be clearly
wrong and manifestly unjust, or the proof of guilt is greatly outweighed by
contrary proof.  See Grotti, 273 S.W.3d at 283.  Accordingly, we overrule appellant’s
second issue.

III.  Conclusion

            Having overruled
appellant’s two issues, we affirm the judgment of the trial court.








                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices Frost,
Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] Emphasis added.





[2] Emphasis added.





[3] Emphasis added.





[4] The Texas Court of
Criminal Appeals has clearly held the jury may consider guilt as to the lesser
offense before deciding on a verdict of the greater offense.  Barrios v.
State, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).





[5]
In Miller v. State, 741 S.W.2d 382 (Tex.
Crim. App. 1987), the Court of Criminal Appeals identified an exception to the
general preservation-of-error rule for improper arguments.  See id. at
391.  There, the court held an appellant need not preserve error as to an improper
argument if it so infected the trial with unfairness as to make the resulting
conviction a denial of due process.  Id.  Because appellant makes no due
process claim here, it is unnecessary for this court to decide whether the Cockrell
court overruled Miller.