# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00534-CR

**Douglas Wendell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-08-302871, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Douglas Wendell pleaded guilty to four counts of robbery. *See* Tex. Penal Code Ann. § 29.02 (West 2003). A jury found him guilty on all counts and assessed punishment at eight years' confinement and a $2,500 fine for each count, the sentences to run concurrently. On appeal, Wendell argues that the trial court erred in refusing to admit evidence of a non-testifying co-defendant's plea-bargained sentence. Because the trial court acted within its discretion, we affirm the judgments of conviction.

## BACKGROUND

At approximately 11:30 p.m. on November 28, 2008, Wendell, armed with a toy BB gun that looked like a "mini Uzi," knocked on the back door of Chuy's restaurant in north Austin.[1]

---

[1] The facts recited herein are from the testimony and exhibits admitted at trial.

When manager Eric Anderson opened the door, Wendell revealed the gun and demanded that Anderson take him to the back office, where another manager, Patti Ellis, and two servers were checking the receipts from their shifts. Upon entering the office, Wendell blocked the only door and demanded money from the safe. Anderson placed approximately $2,000 in a plastic shoe box and gave it to Wendell, who then left. Ellis immediately called 911, and, via a security surveillance system, watched a car drive quickly into the parking lot, pick up Wendell, and drive away.

Police arrived just as the car exited the parking lot and chased it several miles before it crashed into a telephone pole. Both Wendell and the car's driver, LaKishia Simpson, were injured and taken to the hospital.

Wendell was indicted on four counts of robbery. At a jury trial, he pleaded guilty to all counts.[2] During the trial's punishment phase, the State made an oral motion in limine requesting that no mention be made of Simpson's sentence. Simpson, also charged with four counts of robbery, had entered into a plea bargain with the State in which she pleaded guilty to two of the four counts and received two concurrent four-year sentences. In response to the State's motion in limine, defense counsel replied:

> Your Honor, I wanted to introduce — I mean, I just felt like there's been enough mention of LaKishia Simpson, her role in the crime. I just wanted the jury to get some sense of proportionality. . . . I would like the jury to have some sense of proportionality to the sentence between the two people who were involved in this crime.

---

[2] Prior to his trial, Wendell rejected a plea bargain offer from the State of ten years' imprisonment.

2

The trial court granted the motion in limine, finding that "it is not relevant as to sentencing of this particular defendant" and "the prejudicial value outweighs the probative value."

Wendell later took the stand and admitted that he committed the November 28 robbery to support his cocaine addiction. On cross-examination, the following exchange took place:

State:      Okay. What message do you think it would send to the criminals of Travis County if the headline read, Douglas Wendell, Chuy's robber, held four people hostage in a room, made off with $2,000 cash, gets soft or light sentence? Do you think that would send a message?

Wendell:    Well, I think it would show that there was still compassion for someone that made a huge mistake.

. . . .

State:      So are you saying that you think that the people that are in Travis County and outside that are willing to rob people at gunpoint would send a message that they are going to be shown compassion?

Wendell:    Well, nobody could have been hurt by a toy gun that didn't even work.

. . . .

State:      Now, do you think the message would be — do you think that the criminals and the gang-bangers and the people that may, in fact, pop somebody in the back of the head and leave them in a room, do you think that that's going to pick up — they are going to draw some fine detail in [using a toy gun] or are they just going to see the headline?

Wendell:    Well, I think the people that you are speaking of don't even read the newspaper.

State:      How about the people in the jail? Would you agree with me that when you have a trial and you have a verdict that news of that gets around? And people know the currency exchange for what the value of a certain offense is and that you get a verdict, those people over in

3

the jail over in Del Valle, they are going to know that. Do you agree with that?

Wendell: Yes, sir. They get — I see it every day while I'm locked up over there that people are getting probation and — two years for pistol whipping somebody. You know, I have seen a lot of people that's in there for aggravated cases that are just, you know, with ten felonies on their record just get — practically turn them loose.

During a bench conference following Wendell's testimony, defense counsel again argued for the admissibility of Simpson's plea bargain, claiming that evidence of Simpson's sentence and plea bargain was "a little more relevant now" because "the State has made an issue of the message that's being sent by sentences." Defense counsel argued that the State opened the door to evidence of Simpson's sentence by arguing "about sending a message, [when] they are giving co-defendants four years. I just think the jury is entitled to know what — the lack of consistency in the district attorney's office in this case. . . . They are going to give one guy four years and then they're going to turn around and give somebody else another sentence." The State responded that "everything was contained to the questions of [Wendell], and [they were] directed at the person who holds four people hostage, and it was specific to that act." The State also observed that "different circumstances" existed in Simpson's trial, including a different court and prosecutor. The trial court again denied the defense counsel's motion, stating, "I don't think that the probative value outweighs the prejudicial effect in this case and that — I know nothing about her circumstance, and if we go into her case we're going to need to litigate why she got that."

After hearing evidence of Wendell's two prior felony convictions and testimony from several positive character witnesses, the jury assessed punishment at eight years' imprisonment and

a $2,500 fine for each of Wendell's four counts of robbery, the sentences to run concurrently. Wendell appeals, claiming that the trial court erred in excluding evidence of Simpson's sentence.

## STANDARD OF REVIEW

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). A trial court is given wide latitude to admit or exclude evidence and abuses its discretion only when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

## DISCUSSION

In his first and only issue on appeal, Wendell argues that the trial court erred in excluding evidence of Simpson's plea-bargained sentence. He claims that the State "opened the door" to the evidence through its discussion of Simpson's role in the crime and its argument that a light sentence would send the wrong message to the public.

In a non-capital felony trial, evidence is admissible during the punishment phase if "the court deems [it] relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2010). Evidence is relevant to sentencing if it helps the jury "tailor the sentence" to the particular offense and defendant. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). The admissibility of evidence during the punishment phase is a function of policy rather than a question of logical relevance. *Id.*; *Miller-El v. State*, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990). Some of the policy reasons that should be considered when determining whether evidence is relevant

5

to sentencing include, but are not limited to: giving complete information for the jury to tailor an appropriate sentence for a defendant, the policy of optional completeness, and whether a defendant admits the truth in sentencing. *See Sunbury v. State*, 88 S.W.3d 229, 233-34 (Tex. Crim. App. 2002) (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)).

Generally, evidence regarding the sentence of a non-testifying co-defendant is inadmissible. *See Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987) (en banc); *Morales v. State*, 11 S.W.3d 460, 465-66 (Tex. App.—El Paso 2000, pet. ref'd); *Beasley v. State*, 838 S.W.2d 695, 703 (Tex. App.—Dallas 1992, pet. ref'd) ("Ordinarily, the disposition of a case against codefendants never becomes admissible in the trial of another codefendant.").

Wendell's counsel acknowledged at oral argument that this type of evidence is generally inadmissible, but argued that evidence of Simpson's sentence was admissible because the State "opened the door." *See Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007); *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999) ("It is well established that the evidence which is used to fully explain a matter opened up by the other party need not ordinarily be admissible."); *see also Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

Wendell first claims that the State opened the door to Simpson's sentence by introducing evidence of Simpson's role as the driver of the getaway car. However, merely mentioning the identity of a non-testifying co-defendant and her role in the crime does not create any false impressions with the jury and thus cannot open the door to her sentence. *See, e.g.*, *Miller*,

6

741 S.W.2d at 388-90 (describing trial evidence about non-testifying co-defendant's role in murder but excluding evidence of his sentence).

Wendell next claims that the State's discussion of the message sent by his sentence and the suggestion that there is a "value" associated with a particular offense opened the door to evidence of Simpson's sentence. He alleges that the State created a false impression that the crime of robbery had a certain consistent punishment, and that such a punishment should not be a "light sentence." This impression, Wendell argues, was contrary to Simpson's negotiated plea bargain in which she pleaded guilty to only two counts of robbery and received four years' jail time for the same crime for which Wendell now faced punishment.

"Opening the door," however, is limited in its scope. The party offering the otherwise inadmissible evidence may not "stray beyond the scope of the invitation." *Schutz*, 957 S.W.2d at 71. We see no reason why the State's discussion, which was limited to the public impact of Wendell's sentence as the man who held up four employees with a toy gun, would invite evidence of Simpson's sentence as the driver.

Furthermore, the trial judge had discretion to exclude the evidence under Texas Rule of Evidence 403, even if the State had opened the door. *See* Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."). The probative value of Simpson's plea bargain in relation to Wendell's sentencing was slim given the differences between the two defendants' circumstances. Each had different prosecutors, different trial courts, different criminal histories, and

7

played different roles in the crime. Therefore, evidence of Simpson's sentence has limited probative value in determining an appropriate sentence for Wendell. Additionally, in order for the jury to make sense of Simpson's sentence as compared to Wendell's, it would have had to hear all of the evidence related to Simpson's involvement in the crime, mitigating factors, and her prior criminal history. This additional evidence would create a significant risk of substantial prejudice, confusion of the issues, and misleading the jury. Therefore, we conclude that the trial court acted well within the "zone of reasonable disagreement" in excluding the evidence of Simpson's sentence. *See Lopez*, 86 S.W.3d at 230.

Public policy reasons also support our conclusion that the State did not err in its exclusion of Simpson's plea bargain. If Wendell's theory were correct and the evidence of Simpson's sentence were admissible to show the "lack of consistency in the district attorney's office," evidence of Wendell's rejected plea bargain would be equally "relevant," as would all other plea bargains in any robbery case. Allowing evidence of plea bargains would run against well-settled public policy. *See Eichelberger v. State*, 232 S.W.3d 225, 227-28 (Tex. App.—Fort Worth 2007, pet. ref'd) ("The court of criminal appeals . . . specifically held that public policy mandates the exclusion of plea-bargained sentences or offers from evidence." (citing *Prystash v. State*, 3 S.W.3d 522, 528 (Tex. Crim. App. 1999))). Even if Simpson's plea-bargained sentence were somehow minimally relevant to Wendell's sentencing, "to permit admission into evidence of plea-bargained sentences obtained by nontestifying accomplices would discourage the State from making plea bargains to avoid their admission into evidence." *Id.* at 228. The court of criminal appeals has

8

recognized that "plea bargaining is essential to the administration of justice in America." *Prystash*, 3 S.W.3d at 528.

Therefore, we conclude that the trial court did not abuse its discretion in refusing to admit evidence of Simpson's sentence. We overrule Wendell's sole point of error.

## CONCLUSION

Because we hold that the trial court did not abuse its discretion, we affirm the judgments of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   January 12, 2011

Do Not Publish