MEMORANDUM OPINION



No. 04-06-00334-CR



Fausto REYES,


Appellant



v.



The STATE of Texas,


Appellee



From the 341st Judicial District Court, Webb County, Texas


Trial Court No. 2005-CRN-166-D3


Honorable Elma Teresa Salinas Ender, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Rebecca Simmons, Justice


Delivered and Filed: January 16, 2008


AFFIRMED

 Fausto Reyes was convicted by a jury of two counts of murder; two counts of aggravated
kidnapping; and two counts of engaging in organized crime. Reyes's primary arguments are that the
trial court erred by: (1) allowing an amended indictment over Reyes's objection; (2) denying Reyes's
motions to exclude evidence of severed co-defendants' convictions and sentences; (3) denying
Reyes's motions for directed verdict on various sufficiency of the evidence grounds; (4) overruling
Reyes's objections to the jury charge; and (5) requiring Reyes to show his tattoos during trial. We
affirm the judgment of the trial court.

Background

 Two male bodies were found bound and shot in the trunk of a burning car by firefighters
responding to a call in Pueblo Nuevo. Hours later, Lorenzo "Larry" Ayala approached a border
patrol agent, asked for protection, and told the officer he had witnessed a kidnapping in Laredo. 
Ayala claimed he had witnessed the abduction of Enrique Botello and Robert Patino and was now
being followed by members of the Mexican Mafia. Investigators used Ayala's statement to gather
details regarding the two bodies and to identify suspects.

 Ayala was the accidental guest of a gang-related, drug-dealing family residing at 4001
Chickasaw in Laredo. Ayala witnessed Patino, Botello, and two other members of the Mexican
Mafia beat ("discipline") Michael "Shorty" Alegria and collect $1,500 plus a pickup truck ("a fine")
from his mother, Eliza Morales. The next day, when Shorty's brother, Jose "Joey" Alegria, was
about to drive Ayala to the bus station, several cars arrived and blocked Joey's vehicle. The men in
the vehicles were members of a rival part of the Mexican Mafia. They ordered Ayala and Joey back
into the house. 

 When the men discovered the discipline and the fine, they were angry and decided to "show
the protection" for Alegria's family. Defendant Fausto Reyes and Reynaldo Esparza remained at the
Chickasaw house to wait for an opportunity to ambush Patino and Botello. Joey and Morales lured
Botello and Patino back to the house, then Reyes and Esparza took them down at gunpoint, bound
them, and dragged them to the kitchen. The victims were placed in the trunk of a car, driven to
Pueblo Nuevo, and shot.

 Reyes and six other men were indicted on two counts of murder; two counts of aggravated
kidnapping; and two counts of engaging in organized crime relating to the abductions. Before
Reyes's trial, the other defendants' trials were severed to avoid prejudice. After two mistrials, Reyes
was tried by a jury and convicted of all charges.

Analysis

A. Amended Indictment

 An indictment may be amended after notice to the defendant with leave of the court. Tex.
Code Crim. Proc. Ann. arts. 28.10-11 (Vernon 2006). An indictment is amended when the
instrument is physically altered or when a modified copy is "incorporated into the record under the
direction of the court, . . . with the knowledge and affirmative assent of the defense." Riney v. State,
28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000). Amendments are prohibited on the date of trial or
after trial has begun if the defendant objects. Tex. Code Crim. Proc. Ann. art. 28.10 (b) (Vernon
2006); Hillin v. State, 808 S.W.2d 486, 488 (Tex. Crim. App. 1991). If an indictment is amended
before trial begins, the defendant has a right to request ten days to prepare his defense in light of the
change, or he may object if the amended indictment charges an additional or different offense. Tex.
Code Crim. Proc. Ann. art. 28.10 (a), (c) (Vernon 2006); Hillin, 808 S.W.2d at 488-89. The
purpose of these statutory requirements is to ensure the defendant has adequate notice of the charges
against him in order to prepare a defense. Adams v. State, 707 S.W.2d 900, 901 (Tex. Crim. App.
1986).

 Reyes contends the trial court erred in allowing the State to proceed on an amended
indictment that was amended on the day of trial over his objection. Reyes's argument fails for two
reasons.

 First, the record establishes: (1) the State's certificate of service for its motion to amend,
which included the amendment, was sent to Reyes's counsel on October 13, 2005; and (2) the
indictment was physically amended on October 20, 2005 changing "[Reyes] did . . . cause the death
of . . . [victim], by shooting [victim] with a firearm and burning [victim]" to "[Reyes] did . . . cause
the death of . . . [victim], by shooting [victim] with a firearm or burning [victim]." (emphasis
added). The certificate of service indicates Reyes had notice of the amendment in 2005, several
months before trial. See Smith v. State, 846 S.W.2d 515, 516-17 (Tex. App.--Houston [14th Dist.]
1993, pet. ref'd) (holding that defendant waived any complaint about an amended indictment when
he failed to object for six months).

 Second, during a bench conference on March 28, 2006, the State notified Reyes it would use
the amended indictment served on Reyes's counsel in 2005. Reyes's counsel did not object nor
indicate she had not been served with a copy of the amendment. Reyes's trial began twenty-one days
later on April 18, 2006. On April 19, 2006, Reyes's counsel objected to the indictment on the
grounds that Reyes had not received notice of the amendment to the indictment; however, "defense
counsel's unsworn assertions to the trial court regarding lack of notice do not serve as evidence to
controvert the record." Daniels v. State, No. 06-05-00277-CR, 2007 WL 1295818, at *3 (Tex.
App.--Texarkana May 4, 2007, no pet.) (not designated for publication); see also Wingate v. State,
487 S.W.2d 89, 92-93 (Tex. Crim. App. 1972). 

 Because Reyes received notice of the State's intent to amend the indictment, which was
amended in October of 2005, and Reyes had notice of the amendment at least during the bench
conference on March 28, 2006, the record establishes that Reyes was notified more than ten days
prior to his trial date and had sufficient notice of the amendment to prepare a defense. Reyes's first
point of error is overruled.

B. Evidence of Co-defendants' Indictments and Sentences

 Generally, evidence of a non-testifying co-defendant's plea or conviction is inadmissible. 
Miller v. State, 741 S.W.2d 382, 389-90 (Tex. Crim. App. 1987); Morales v. State, 11 S.W.3d 460,
465-66 (Tex. App.--El Paso 2000, pet. ref'd). However, if a co-defendant testifies, the prosecution
may question him regarding his motive for testifying for the State and against the accused. Miller,
741 S.W.2d at 389.

 Reyes argues that the trial court erred in admitting evidence of co-defendants' prior trials,
convictions, and sentences thereby denying him a fair trial. Reyes cites no specific facts in the record
in support of his argument; however, during the State's case-in-chief, the prosecutor asked a co-defendant witness about his plea and a non-testifying co-defendant's plea. Reyes did not object at
that time. Even if it was error to allow the non-testifying co-defendant's plea into evidence, Reyes
waived error by failing to object to the complained-of evidence when it was introduced. Tex. R.
App. P. 33.1. Hence, the trial court did not err, and Reyes's second point of error is overruled.

C. No Corroborating Evidence to Accomplice Testimony

 Article 38.14 of the Texas Code of Criminal Procedure requires accomplice testimony to be
corroborated by other evidence tending to connect the defendant with the charged offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). We eliminate all accomplice testimony and
consider whether the remaining evidence tends to connect the defendant to the offense. McDuff v.
State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). This evidence must do more than simply show
the commission of the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). However,
it need not directly link the defendant to the crime nor establish his guilt beyond a reasonable doubt. 
McDuff, 939 S.W.2d at 612; Torres v. State, 137 S.W.3d 191, 196 (Tex. App.--Houston [1st Dist.]
2004, no pet.).

 Reyes contends his conviction was based solely upon accomplice testimony. Reyes argues
that witnesses Joey Alegria, Eliza Morales, and Larry Ayala were all accomplices, either as a matter
of law or as a matter of fact. The State concedes Alegria was an accomplice but asserts Morales's
complicity was decided by the jury. The trial court submitted Morales's status as an accomplice to
the jury by the following instructions: 

Now, if you believe from the evidence beyond a reasonable doubt that an
offense was committed and you further believe from the evidence that the
witness, ELIZA MORALES, was an accomplice, or you have a reasonable
doubt whether she was or not, as that term is defined in the foregoing
instructions, then you cannot convict the defendant upon the testimony of
the said ELIZA MORALES unless you first believe that the testimony of the
said ELIZA MORALES is true and . . . even then you cannot convict
the defendant unless you further believe that there is other evidence in this
case, . . . tending to connect the defendant with the commission of the offense 
. . . , and then from all the evidence you must believe beyond a reasonable
doubt that the defendant is guilty.


Accordingly, Morales's status as an accomplice was properly submitted to the jury, and the jury
made the determination as to whether or not her actions rose to the level of an accomplice. Even if
the jury decided Morales was an accomplice, however, the State argues Ayala was not an
accomplice; therefore, his testimony was sufficient to connect Reyes to the offense. 

 Before deciding whether Ayala's testimony corroborated that of any accomplices, we must
first determine whether Ayala was a non-accomplice. "A witness is not an accomplice witness
merely because he may have known of the offense and did not disclose it or even concealed it." 
McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996), overruled on other grounds by
Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998). An accomplice must have committed an
affirmative act to promote the commission of the offense and be a suspect for the offense with which
the defendant is charged. Id.

 Ayala was neither a suspect in the case nor indicted for the charges at issue. Even though
Ayala admitted to smuggling illegal aliens and taking drugs at the Chickasaw residence, he was
present at the commencement of the crimes by happenstance as he waited for a ride to the bus
station. Ayala was treated with hostility by the perpetrators who guarded him, threatened to kill him,
and followed him out of town. Ayala took no affirmative act to promote the commission of the
crime either before, during, or after the offense. See id. He told the perpetrators he wanted nothing
to do with their actions and asked to leave before the violence started. Ayala was forced to sit on
a couch while witnessing the attacks, and then he retreated to a room for several hours while the
remaining events took place. He left Laredo at the first moment he could and sought police
protection at the first checkpoint where his bus stopped. Hence, Ayala was not an accomplice as a
matter of law or fact. See id.

 Because Ayala is a non-accomplice, we consider his testimony in determining whether the
remaining evidence tends to connect Reyes to the offense after we eliminate all accomplice
testimony. See McDuff, 939 S.W.2d at 612. The following is a summary of Ayala's testimony. 
Ayala witnessed Botello and Patino beat Shorty to "discipline" him at the Chickasaw residence. The
next day, Ayala was in a car with Shorty's brother, Joey, about to leave town via bus when
approximately ten cars pulled up and blocked them in at the Chickasaw residence. Ayala was
approached by Esparza, who had a gun and ordered him not to move. Ayala was forced out of the
car and into the house by Esparza, and his cell phone was taken away. Although most of the men
who arrived in the cars later left, three of the men stayed in the house to wait for the victims, Botello
and Patino. Ayala identified two of the three men as the defendant, Reyes, and Esparza, who each
had a gun. Ayala witnessed Reyes and Esparza attack Botello and Patino as they came through the
door of the residence. Botello and Patino were each taken to the ground at gunpoint, bound, and
taken toward the kitchen by the three men and Shorty. After approximately four hours, Joey, who
appeared pale, retrieved Ayala from the back room, and Ayala saw Morales and some other women
cleaning the kitchen. Later, Ayala overheard Esparza and Joey's father discussing what to do with
him because he "saw everything." Ayala felt his life was threatened when some of the men who had
arrived with Reyes and Esparza followed him out of town.

 We view corroborating evidence in the light most favorable to a finding of guilt. Cantelon
v. State, 85 S.W.3d 457, 461 (Tex. App.--Austin 2002, no pet.) (citing Knox v. State, 934 S.W.2d
678, 686-87 (Tex. Crim. App. 1996)). Accomplice testimony established that Reyes waited for
Botello and Patino, took them down at gunpoint, bound them, and helped place them in the trunk
of a car. The bodies of Botello and Patino were found in the trunk of a charred car, bound and shot. 
Although Ayala's testimony alone may not establish Reyes's guilt beyond a reasonable doubt, it does
more than "point the finger toward the accused." It provides other evidence that tends to connect
Reyes to the kidnappings, murders, and gang activity and corroborates the testimony of the
accomplice witnesses. Reyes's third point of error is overruled.

D. Failure to Prove the Identity of the Victims

 In his fourth point of error, Reyes asserts the evidence is legally insufficient to establish that
Patino was one of the murder victims. In arguing this point of error, Reyes raises numerous
complaints relating to the trial court's admission of a DNA analysis that identified one of the victims
as Patino. By combining more than one contention in a single point of error, this court could deny
Reyes's issue on the grounds that it is multifarious and presents nothing for review. Sparkman v.
State, 55 S.W.3d 625, 630-31 (Tex. App.--San Antonio 2000, no pet.). In the interest of justice,
however, we will briefly address the sufficiency issue. (1)

 In reviewing a legal sufficiency challenge, we review all the record evidence in the light most
favorable to the jury's verdict to determine whether any rational jury could have found all the
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). 
When conducting a sufficiency review, we consider all of the evidence admitted, whether proper or
improper. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Even if the trial court
improperly admitted evidence, the verdict may be sustained by properly admitted evidence. 
Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).

 Here, the State offered autopsy evidence that the two victims--who were found bound,
blindfolded, and burned in the trunk of a car--died from gunshot wounds. Witness testimony
established that Botello and Patino were bound and placed in the trunk of a car together. Botello's
body was identified through dental testing performed as part of his autopsy and admitted into
evidence. Patino's body was identified through a DNA report presented by the custodian of records
for the justice of the peace. Reyes argues that the creation of a DNA report is not part of the regular
business of a justice of the peace and, therefore, the DNA report was improperly admitted hearsay. 
Even if the DNA evidence was improperly admitted, however, we may consider such evidence in
determining whether or not there was sufficient evidence to prove Patino was murdered. See
Conner, 67 S.W.3d at 197. Furthermore, even absent the DNA analysis, the evidence established
that the bodies of Botello and Patino were placed into the trunk of a car together. Based on the
evidence establishing that Botello was one of the victims, the jury could infer from the evidence that
the second victim was Patino. Anderson, 717 S.W.2d at 628. As a result, there is sufficient evidence
to establish that Botello and Patino were murdered.

E. Jury Charge and Instructions for the Law of the Parties

 Reyes argues that the trial court erred when it denied him a special jury instruction requiring
the jury to indicate whether he was guilty as a principal or under the law of the parties. Relying on
Jefferson v. State, Reyes avers that the trial court's failure to give the instruction relieves the State
of its burden to have a jury unanimously convict Reyes of the charges. Jefferson v. State, 189
S.W.3d 305, 311 (Tex. Crim. App. 2006). Reyes's reliance on Jefferson v. State is unfounded. The
Jefferson court stated that the unanimity requirement is to guarantee that the State prove all of the
elements of the offense, not to force the jury to agree on which alternative mode of commission the
defendant used. Id. Although a charge on the law of the parties allows the jury to decide whether
the defendant acted alone or whether he acted as a party to the offense, it does not require the jury
to indicate whether it found the defendant guilty of one type of responsibility or the other. Tex.
Penal Code Ann. § 7.01 (Vernon 2003); see also Toluao v. State, No. 2-04-040-CR, 2005 WL
1994179, at *3 (Tex. App.--Fort Worth Aug. 18, 2005, pet. ref'd) (not designated for publication)
("jury unanimity regarding the defendant's liability as a principal or as a party is not required, as long
as the jury unanimously agrees that the defendant committed the same offense"). 

 The State presented sufficient evidence to merit a charge for individual culpability as well
as party complicity. Testimony established Reyes and two other men waited for Botello and Patino
to arrive at the Chickasaw house. Two of the men, including Reyes, carried a gun. Reyes restrained
Patino at gunpoint. The men dragged the victims to the kitchen, and Reyes and Shorty bound them. 
Reyes ordered Shorty and Joey to help place the victims in the trunk of a car, and Reyes opened the
trunk. Reyes ordered Shorty to burn the victims' personal belongings. Reyes drove the car that the
victims were in, and later the bodies of Botello and Patino were found bound, shot, and burned in
the trunk of a car. Therefore, the jury could have chosen to convict Reyes based on either individual
responsibility or party responsibility.

F. Prejudicial Effect of Having Reyes Show His Tattoos

 Relevant evidence is admissible because it has a tendency to make the existence of a
consequential fact more or less probable than it would be without the evidence. Tex. R. Evid. 401,
402. Rule 403 allows a trial court to exclude otherwise relevant evidence if "its probative value is
substantially outweighed by the danger of unfair prejudice." Tex. R. Evid. 403. Additionally,
evidence of a person's character may not be proven through other crimes or bad acts to show the
person acted in conformity therewith. Tex. R. Evid. 404. However, other crimes or bad acts may
become admissible if the State can show "both [(1)] that the transaction is relevant to a material issue
in the case; and [(2)] the relevancy value of the evidence outweighs its . . . prejudicial potential." 
Plante v. State, 692 S.W.2d 487, 491 (Tex. Crim. App. 1985) (internal quotations omitted). 
Following proper objections, a trial court should evaluate the relevance of such other crimes or bad
acts under Rule 404, then balance the probative versus prejudicial value of the evidence under Rule
403. Johnson v. State, 932 S.W.2d 296, 301, 303 (Tex. App.--Austin 1996, pet. ref'd). We review
a trial court's decision to admit evidence for an abuse of discretion. Resendiz v. State, 112 S.W.3d
541, 546 (Tex. Crim. App. 2003). Even if a trial court abuses its discretion in allowing prejudicial
evidence, the error may not be harmful to the defendant. Plante, 692 S.W.2d at 495. If the trial
court's ruling is within the zone of reasonable disagreement, we affirm. Moses v. State, 105 S.W.3d
622, 627 (Tex. Crim. App. 2003).

 Reyes contends the trial court erred in allowing the State to reveal Reyes's tattoos by having
him remove his shirt in front of the jury and argues the probative value of such evidence was
outweighed by its prejudicial effect. Reyes further asserts the tattoo evidence was introduced to
prove Reyes was a member of the Mexican Mafia and, therefore, had "done something real bad," in
violation of Rule 404's prohibition of proving character through other crimes and bad acts. 

 Reyes was charged with two counts of engaging in organized criminal activity. The State
was required to show Reyes was a member of a criminal street gang or combination before it could
prove Reyes had engaged in organized criminal activity. Tex. Penal Code Ann. § 71.02 (Vernon
Supp. 2007); Canales v. State, 98 S.W.3d 690, 697 (Tex. Crim. App. 2003) (concluding evidence
of membership in a gang was part of the combination element of the charged offense). In this case,
the testimony established that the murders were committed by Mexican Mafia members from Laredo
in retaliation for Mexican Mafia members from San Antonio disciplining a member that belonged
to the Laredo gang. The tattoo evidence was relevant to show Reyes's membership in the Laredo
gang and joint participation in the murder of Botello and Patino. Therefore, the trial court did not
abuse its discretion in determining that the tattoos were relevant as evidence of a criminal
combination rather than as evidence of Reyes's character. 

 Reyes contends that even if the tattoo evidence was relevant, the probative value of such
evidence was outweighed by its prejudicial effect. While the tattoos were evidence of Reyes's
membership in the Mexican Mafia, the State offered other evidence of his gang membership. For
example, the testimony of Ayala and Morales established that Reyes was one of the men who arrived
with the Mexican Mafia and stayed behind to ambush the victims. The State presented the testimony
of accomplice Joey Alegria that Reyes was part of the Mexican Mafia and Joey was afraid of what
the gang might do to his family. Furthermore, the State introduced: (1) pictures of Reyes's tattoos,
taken at the time of his booking; and (2) two "waivers of liability" for Reyes, dated 2003 and 2005,
where Reyes declared he was a member of the Mexican Mafia and signed the documents. Given the
other evidence indicating Reyes's gang membership, the trial court did not abuse its discretion by
allowing the State to reveal Reyes's tattoos over his objections of unfair prejudice. Tex. R. Evid.
403; Thompson v. State, 54 S.W.3d 88, 98 (Tex. App.--Tyler 2001, pet. ref'd) (indicating that when
the tattoos are "only one indicator of gang membership, [they are] not so prejudicial as to outweigh
the probative value of the tattoos"); see also Love v. State, 730 S.W.2d 385, 395-96 (Tex.
App.--Fort Worth 1987, no pet.) (holding it was not unnecessarily offensive or degrading to have
the defendant remove his shirt at trial).

G. Insufficiency of the Evidence

1. Legal Insufficiency

 We review the legal sufficiency of the evidence by viewing the evidence in the light most
favorable to the prosecution to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319. The standard
of review is the same for both direct and circumstantial evidence cases. Kutzner v. State, 994
S.W.2d 180, 184 (Tex. Crim. App. 1999). 

 The State presented ample evidence of Reyes's involvement in the gang-related abduction
and murders of Botello and Patino. Testimony established that after Botello and Patino "disciplined"
Shorty, Reyes arrived at the Chickasaw house with a group of men affiliated with the Mexican
Mafia. The Mexican Mafia members were angry at the actions taken by Botello and Patino. Three
men, including Reyes, were left behind to take revenge on Botello and Patino. Testimony further
established that Reyes took Patino by force and restrained him at gunpoint. Reyes assisted in "taking
down" the second victim, Botello. The three men dragged the two victims to the kitchen, and Reyes
and Shorty bound them. Reyes ordered others to place the victims in the trunk of a car, and Reyes
opened the trunk. Reyes ordered Shorty to burn the victims' personal belongings. Reyes drove the
car that the victims were in, and later the bodies of Botello and Patino were found bound, shot, and
burned in the trunk of a car. Looking at the evidence in the light most favorable to the prosecution,
a reasonable jury could have determined that Reyes kidnapped and murdered Botello and Patino in
a gang-related offense. 

2. Factual Sufficiency

 We review the factual sufficiency of the evidence by considering all of the evidence in a
neutral light and only reversing if: (1) the evidence is so weak as to make the verdict clearly wrong
or manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. 
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (citing Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000)). Although we analyze all of the evidence presented at trial,
the jury is the sole judge of the facts, the credibility of the witnesses, and the weight given to their
testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When viewing the
evidence in a neutral light, we take into consideration all of the evidence and weigh that evidence
which tends to prove the disputed fact against the conflicting evidence. Johnson, 23 S.W.3d at 7. 
However, we may not substitute our own judgment for that of the jury. Id. at 12.

 Reyes offered no evidence to support his innocence during trial. The only evidence
contradicting the State's evidence came through the cross examination of the State's witnesses and
discrepancies in their testimony. There was conflicting testimony regarding whether Reyes drove
the car in which the victims were placed; however, there was no dispute that Reyes ambushed the
victims with a gun, bound them, and ordered them to be placed in the trunk of a car. There was
conflicting testimony regarding who actually grabbed Botello, but there was no dispute that Reyes
attacked Patino and that Botello and Patino's bound bodies were found shot in the trunk of a burned
car. Moreover, Reyes did not cite any conflicting evidence in the record which might show that the
verdict is clearly wrong and unjust or against the great weight and preponderance of the evidence.

 The State presented Ayala's eye-witness testimony that Reyes was the person who: arrived
at the Chickasaw house with the Mexican Mafia; stayed behind to ambush Botello and Patino;
attacked his victims at gunpoint, bound them, and dragged them to the kitchen. Sergeant Hunter
testified that he saw and photographed the bodies of Botello and Patino bound and shot in the trunk
of a burned car. This evidence was corroborated by accomplice testimony that added key details
such as identifying Reyes as the person who ordered the victims to be placed in the trunk of a car and
their belongings burned. The State supplied a motive for the crimes through non-accomplice
testimony establishing that Reyes was a member of the Mexican Mafia, Shorty was a member of the
Mexican Mafia, and some Mexican Mafia members were angry with Botello and Patino for
"disciplining" Shorty the day before the murders. Therefore, the verdict was not clearly wrong and
unjust or against the great weight and preponderance of the evidence. Reyes's seventh point of error
is overruled.

Conclusion

 The judgment of the trial court is affirmed.


 Catherine Stone, Justice

DO NOT PUBLISH

 


1. With regard to the admissibility of the DNA analysis, we briefly note that medical records, including DNA
evidence, are admissible under the business records exception to the hearsay rule, and medical records may be properly
introduced by a custodian of records. Tex. R. Evid. 803(6); Melendez v. State, 194 S.W.3d 641, 644 (Tex.
App.--Houston [14th Dist.] 2006, pet. ref'd). Furthermore, the introduction of medical records as a hearsay exception
does not violate a defendant's confrontation rights. Crawford v. Washington, 541 U.S. 36, 42, 56 (2004) (listing business
records as a non-testimonial hearsay exception). Finally, the failure to request a postponement or seek a continuance
waives any error urged in an appeal on the basis of surprise. Lindley v. State, 635 S.W.2d 541, 544 (Tex. Crim. App.
1982).