Jaimey Dale **EICHELBERGER,**
Appellant,

v.

The **STATE of Texas, State.**

No. **02–06–078–CR.**

Court of Appeals of Texas,
Fort Worth.

May 31, 2007.

Discretionary Review Refused
Nov. 21, 2007.

---

Thomas Lasater Allensworth, Wichita Falls, for Appellant.

Barry L. Macha, Crim. Dist. Atty., John W. Brasher, Asst. Crim. Atty., Mark Barber, Asst. Crim. Dist. Atty., for Appellee.

PANEL F: LIVINGSTON, DAUPHINOT and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. Introduction

Appellant Jaimey Dale Eichelberger pleaded guilty before a jury to the offense of manufacturing 400 or more grams of methamphetamine. The punishment phase of Appellant's trial proceeded before a jury, and the jury ultimately assessed Appellant's punishment at fifty-five years' confinement and a $25,000 fine. The trial court reduced the fine to $10,000 and otherwise sentenced him accordingly. This appeal followed. In his sole issue on appeal, Appellant claims that the trial court abused its discretion by excluding from evidence the plea-bargained punishments—ten years' confinement probated for ten years—assessed against Appellant's nontestifying accomplices. Because we hold for the reasons set forth below that the trial court did not abuse its discretion, we will affirm the trial court's judgment.

### II. Procedural and Factual Background[1]

Operating on a call from an unknown citizen complaining of an odor emanating from a certain house in Wichita Falls, police arrived at the house. The police recognized the odor as ether and saw Appellant coming from the back of the home carrying a five-gallon bucket in each hand. Ether and five-gallon buckets are both commonly used in the manufacture of methamphetamine, so the police arrested Appellant. The police patted down Appellant and found one-half ounce of methamphetamine and $1,600 in his pockets.

Police also encountered Jaime Johnson on the premises. Johnson had a strong, unmistakable smell of ether on his person, so police arrested him. Police successfully encouraged a woman, Kendra Potts, to exit the house and arrested her also. Police then obtained a warrant to search the house and discovered an operating methamphetamine lab.

Appellant established at trial that Johnson actually rented the house with his girlfriend Potts and that when Johnson was arrested, police found $2,500 cash in his pockets.

Appellant called numerous witnesses who testified to Appellant's desire to end his addiction to drugs and to lead a sober life. Appellant himself testified that he desired to change his life.

### III. Standard of Review

■ When reviewing a trial court's ruling on the admission of evidence, an

1. Appellant's brief contains a detailed summary of the evidence presented at the punishment phase of Appellant's trial. Much of the evidence, however, is not relevant to the issue raised on appeal, so we present only an overview of the relevant facts here.

appellate court applies an abuse of discretion standard of review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 101–102 (Tex.Crim.App.1996).

## IV. Refusal to Admit Evidence of Plea–Bargained Punishments Assessed Against Nontestifying Accomplices

■ In his sole issue, Appellant claims that the trial court abused its discretion by refusing to permit him to introduce into evidence the plea-bargained punishments assessed against Johnson and Potts, ten years' confinement probated for ten years. The trial court did permit Appellant to make an offer of proof, and that record is before us.

Appellant first claims that evidence of the punishment imposed on Johnson and Potts meets the Rule 401 relevancy standard and points out that under Texas Code of Criminal Procedure article 37.07(c)(1), evidence may be offered at the punishment phase of trial "as to any matter the court deems relevant to sentencing." TEX.CODE CRIM. PROC. ANN. art. 37.07(c)(1) (Vernon Supp.2007); *see* TEX.R. EVID. 401. The State contends that evidence of punishments received by nontestifying accomplices is not relevant for two reasons. First, only a defendant's own circumstances are relevant in determining an appropriate punishment for that defendant. *See Cook v. State*, 858 S.W.2d 467, 476 (Tex.Crim.App.1993); *Evans v. State*, 656 S.W.2d 65, 67 (Tex.Crim.App.1983). And second, Johnson and Potts entered into plea-bargain agreements—which by their nature encompass concessions by the State—while Appellant did not enter into a plea-bargain agreement. Thus, the State

argues that the plea-bargained punishments received by Potts and Johnson are not relevant to the issue of what constitutes a proper non-plea bargained punishment for Appellant.

In support of its position, the State points to the case of *Prystash v. State*, 3 S.W.3d 522, 528 (Tex.Crim.App.1999). In *Prystash*, a capital case, the trial court excluded evidence that the State had offered Prystash a plea offer of fifty-five years' confinement. *Id* at 527. Prystash argued that the offer of fifty-five years, as opposed to an offer of life, was admissible at the punishment phase of trial as mitigating evidence relevant to the jury's determination of special issue number two because it reflected the prosecutor's belief that Prystash was not a continuing danger to society. *Id.* The court of criminal appeals explained that the plea bargain agreement offered by the government to Prystash in his own case might be "minimally relevant to a State District Attorney's ... belief that the defendant was not a future danger." *Id.* at 527–528. (quoting *Smith v. State*, 898 S.W.2d 838, 844 (Tex. Crim.App.1995)). But the court of criminal appeals nonetheless held that the plea offer was inadmissible under Rule 403 because

> Public policy favors the conclusion of litigation by compromise and settlement, both in criminal and civil cases, and allowing a criminal defendant to introduce evidence about a sentence offered by the State during plea negotiations clearly militates against this policy. [citations omitted] If evidence of plea bargain offers were admissible, "the State would be ably discouraged from making such offers in the future, and plea bargaining is essential to the administration of justice in America."

*Prystash*, 3 S.W.3d at 528 (quoting *Smith*, 898 S.W.2d at 844 n. 6).

The reasoning of the court of criminal appeals in the *Prystash* case is applicable to the present facts. Even if the plea-bargained sentences obtained by Johnson and Potts were somehow minimally relevant to Appellant's sentencing, this evidence would be inadmissible under Rule 403 based on the public policy rationale articulated by the court of criminal appeals in *Prystash*. *Prystash*, 3 S.W.3d at 528. That is, to permit admission into evidence of plea-bargained sentences obtained by nontestifying accomplices would discourage the State from making plea bargains to avoid their admission into evidence. And the court of criminal appeals has recognized that "plea bargaining is essential to the administration of justice in America." *Id.*

In support of his argument that Johnson's and Potts's plea-bargained sentences should have been admitted at the punishment phase of his trial, Appellant relies upon the case of *Murphy v. State*, 777 S.W.2d 44, 63 (Tex.Crim.App.1989) (op. on reh'g). But, as Appellant points out, *Murphy* holds that at the punishment phase of trial, determining the evidence that the jury is permitted to hear is "more a question of policy than of logic." *Id.* The court of criminal appeals in the subsequent case of *Prystash* specifically held that public policy mandates the exclusion of plea-bargained sentences or offers from evidence. *Prystash*, 3 S.W.3d at 528. Consequently, we cannot agree that *Murphy* dictates a different result.

Finally, regardless of whether under some set of circumstances the plea-bargained sentences obtained by Johnson and Potts were possibly admissible, we cannot say that the trial court's exclusion of this evidence constituted an abuse of discretion. *See, e.g., Montgomery*, 810 S.W.2d at 391. Accordingly, we overrule Appellant's sole issue.

## V. CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's judgment.