COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


NO. 02-09-00299-CR

NATHAN COLLINS                                                              APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In three points concerning the admission of evidence against him, appellant Nathan Collins appeals his conviction and twenty-five year sentence for aggravated robbery.  We affirm.

### Background Facts

On an early morning in March 2006, Dwight Rochon and Deleon Rochon, Dwight's nephew, drove to a Fort Worth bank in a van.  Appellant drove to the same bank with Melinda Lauderdale (appellant's girlfriend) and Jarvis Glenn in

------

[1]*See* Tex. R. App. P. 47.4.

Lauderdale's car, and he pulled up to an ATM. Glenn got out of the back seat of the car, approached the van and the ATM, and demanded Dwight's money. Then, standing a few feet away from Dwight, Glenn pointed a sawed-off shotgun at Dwight's stomach and pulled the trigger. Appellant got out of the car to pick up money that Dwight dropped after being shot. Appellant then drove away.

Fort Worth Police Department (FWPD) Officer Bryan Gilliam received a dispatch call, went to the bank, and saw Dwight lying on the ground. An ambulance took Dwight to a hospital, where he was pronounced dead.

By happenstance, FWPD Officer L.W. Stout saw the car that appellant had driven away from the bank. Officer Stout chased the car and found it near duplexes on Fitzhugh Court, which is three blocks away from the bank. An officer eventually found appellant inside an attic of one of the duplexes after Lauderdale answered the door and gave consent for a search of the duplex. Officer Stout took appellant, who looked like he had recently used drugs, to the police station.[2]

Lauderdale told the police about what had happened and gave a written statement. Appellant also confessed to the crime.

A grand jury indicted appellant with capital murder and aggravated robbery. The trial court appointed counsel to represent appellant, and after the

---

[2]Lauderdale testified that appellant sold drugs. Appellant had previous drug convictions and was on community supervision for a drug offense when he participated in the robbery.

parties filed numerous pretrial documents, he pled guilty to aggravated robbery in exchange for the State's agreement to waive capital murder.[3] The trial court found appellant guilty, and a few days later, a jury trial began on the issue of his punishment.[4] After hearing evidence from several witnesses, including appellant's cousin and his mother, the jury assessed punishment at twenty-five years' confinement. Appellant filed notice of this appeal.

## Admission of Evidence

In three points, appellant argues that the trial court erred by admitting evidence about a previous robbery that Glenn had committed, Lauderdale's fight with appellant's mother that occurred a couple of months before the robbery at the bank, and appellant's gang affiliation.

**Standard of review and applicable law**

The code of criminal procedure provides that after a defendant has been found guilty,

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible.

---

[3]Aggravated robbery is a first-degree felony that carries a maximum punishment of life in prison. *See* Tex. Penal Code Ann. § 12.32(a) (Vernon Supp. 2010), § 29.03(b) (Vernon 2003).

[4]Appellant also pled guilty in front of the jury.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010); *see Cox v. State*, 931 S.W.2d 349, 356 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997); *see also Taylor v. State*, 970 S.W.2d 98, 102–03 (Tex. App.—Fort Worth 1998, pet. ref'd) ("[T]he plain language of [article 37.07] supports a broad interpretation in favor of the admissibility of all relevant . . . evidence, unless the probative value of the evidence is substantially outweighed by its prejudicial effect."). Determining the evidence that the jury is permitted to hear regarding a defendant's punishment is more a question of policy than of logic. *Eichelberger v. State*, 232 S.W.3d 225, 228 (Tex. App.—Fort Worth 2007, pet. ref'd); *see Sunbury v. State*, 88 S.W.3d 229, 233–34 (Tex. Crim. App. 2002) (adding that one of the policy goals is to provide "complete information for the jury to tailor an appropriate sentence").

We review a trial court's decision to admit or exclude evidence regarding punishment for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); *Ramos v. State*, 45 S.W.3d 305, 310 (Tex. App.—Fort Worth 2001, pet. ref'd). In other words, if the trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Ramos*, 45 S.W.3d at 310; *Tow v. State*, 953 S.W.2d 546, 548 (Tex. App.—Fort Worth 1997, no pet.). The abuse of discretion standard applies to questions of relevance. *Jones v. State*, 963 S.W.2d 177, 182–83 (Tex. App.—Fort Worth 1998, pet. ref'd) (explaining that "'relevancy' in the context of a punishment hearing is a normative process to be employed by the fact finder and is not governed by rule [of

evidence] 401"); *see also Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009) ("Borrowing from the definition of 'relevant' in Texas Rule of Evidence 401 is of little avail because the factfinder's role during the guilt phase is different from its role during the punishment phase.").

**Glenn's previous robbery**

In his first point, appellant contends that the trial court abused its discretion by admitting evidence about a previous robbery that Glenn committed. During a hearing outside of the jury's presence, Lauderdale explained that earlier on the evening of the robbery at the bank, she saw Glenn commit another robbery with the same sawed-off shotgun that he used to kill Dwight. Lauderdale said that she told appellant about Glenn's robbery. Appellant objected to the relevance of Lauderdale's testimony regarding Glenn's previous crime, but the trial court overruled the objection. Lauderdale testified about the same event in front of the jury.[5]

In a conclusory fashion, without citing any support from analogous cases, appellant contends that this testimony was not relevant. But we hold that, under the broad standard for admissibility of punishment evidence described above, the trial court did not abuse its discretion by admitting the evidence. The evidence was relevant to appellant's culpability in the robbery at the bank because it

---

[5]Lauderdale also said that months before the robbery at the bank, she learned that Glenn had shot someone at a gas station, and she told appellant about that shooting at that time. Appellant does not complain about the trial court's admission of this testimony.

reflected poorly on his decision to associate with Glenn that day, especially when combined with other evidence showing appellant's knowledge that Glenn had previously shot someone. In other words, as explained by the State, "The jury could quite rightly find it helpful to learn that [a]ppellant knew (or should have known) what he was signing up for when he set out to go to the bank with [Glenn]." *See Salazar v. State*, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002) (explaining that evidence related to the defendant's personal responsibility and moral culpability for an offense is relevant to the determination of punishment); *Kos v. State*, 15 S.W.3d 633, 641 (Tex. App.—Dallas 2000, pet. ref'd).

This is especially true when considering appellant's strategy of minimizing his role in the robbery to request a lenient sentence. During his opening statement, appellant's attorney stated, "I believe that the evidence is going to show you that [appellant] merely drove the car and got out and got the money." And during his closing argument, appellant's attorney similarly tried to downplay appellant's role in the robbery by stating that Glenn was the "guy who got out and shot Dwight Rochon. Jarvis Glenn committed the murder. It was only after Dwight Rochon collapsed in the grass that . . . [appellant] gets out of the car and runs to pick up money, gets back in the car, and he drives away."

We hold that the trial court did not abuse its discretion when it admitted the evidence about Glenn's previous robbery. *See Ramos*, 45 S.W.3d at 310. Thus, we overrule appellant's first point.

6

**Admission of photographs**

In his second point, appellant argues that other testimony from Lauderdale, in which she described assaults against her by appellant and his mother and authenticated pictures related to the assaults, was not relevant. Lauderdale testified that a couple of months before the robbery at the bank, she had a fight with appellant. Lauderdale said that as part of the fight, appellant cut her finger and bruised her head, and then later, appellant's mother came to her home and beat her head.[6] The State offered pictures related to the fight into evidence, and then the following colloquy occurred:

> [DEFENSE COUNSEL:] Ms. Lauderdale, I'm going to go over these pictures with you one by one. First, let me ask you this: These -- these were the injuries that you received as the result of the fight with his mom, correct?
>
> A. Yes, ma'am.
>
> . . . .
>
> Q. Is there -- is this where the fight between you and his mom took place?
>
> A. It's the home -- yes.
>
> Q. Is this where it started?
>
> A. Yes.
>
> Q. Okay. What --
>
> A. *Me and him was fighting.*

---

[6]Lauderdale said that she hit appellant on the leg with a bar during the fight.

. . . .

[DEFENSE COUNSEL]: Judge, I'm going to object to relevance of these pictures. In No. 97, the witness stated she doesn't know who is in this picture.

No. 90 – let's see. No. 90, 91, 92, 93, 94, and 95, and are pictures of -- of injuries that she received as a result of this incident with his mother and also are pictures of the fight that she had between -- of the spots where she had a fight between his mother and herself.

. . . .

[THE STATE:] Well, [Lauderdale], number one, you said all of these pictures fairly and accurately depict you and parts of the scene that -- that happened that night, December 27th of 2005, correct?

A. Yes.

Q. *And, basically, these are injuries that you received as a result of both of those assaults, correct, the assault involving his mom and the assault involving [appellant], correct?*

A. *Yes.*

Q. Because you -- basically, you remember telling 9-1-1 how [appellant] hit you up side your head? Do you remember telling them that?

A. Yes.

Q. *Because that's what he did, correct?*

A. *Yes.*

Q. *And these injuries reflect -- and these pictures reflect all of those injuries, correct?*

A. *Yes, sir.*

[THE STATE]: Your Honor, we move to enter.

[DEFENSE COUNSEL]: Your Honor, his mother is not on trial. My client is the only one on trial. . . . [Lauderdale] has clearly

8

said on Voir Dire with co-counsel that these photographs are photographs of injuries she sustained from [appellant's mother], not [appellant]. They are not relevant, and we object.

. . . .

THE COURT: I'll admit all of the exhibits. [Emphasis added.]

On appeal, appellant contends that Lauderdale's testimony was irrelevant solely because it related to "an assault by [appellant's mother], not [appellant]." But even if we were to assume that pictures relating to an assault by appellant's mother were not relevant to appellant's punishment, the excerpt quoted above shows that the photographs concerned injuries caused by appellant even if they also displayed injuries caused by his mother. A defendant's prior bad acts, whether adjudicated or not, are relevant to the jury's punishment decision.[7] *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Tow*, 953 S.W.2d at 547–48. Because the record belies appellant's assertion that the objected-to photographs related to bad acts by his mother and not by him, we hold that the trial court did not abuse its discretion by admitting the photographs, and we overrule his second point.

---

[7]Whether an extraneous offense or bad act is established beyond a reasonable doubt is a question of fact for the jury, not a preliminary question of admissibility for the trial court. *See Mitchell*, 931 S.W.2d at 953–54; *Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.). The jury charge instructed the jury, "You cannot consider the [extraneous crimes or bad acts] testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts . . . ."

9

**Appellant's gang membership**

In his third point, appellant complains about the trial court's admission of evidence concerning his gang membership. At trial, the State called FWPD Detective Armando Garza to testify as an expert about criminal street gangs and appellant's association with the Truman Street Bloods gang.[8] Detective Garza said that appellant's chest tattoos included the words "STOP," "SIX," and "Truman St.," which indicated that appellant was a member of the Truman Street Bloods from the Stop Six neighborhood. Detective Garza also explained that appellant had other tattoos indicating gang membership. Detective Garza testified that the Truman Street Bloods engaged in murders, aggravated assaults, and narcotics trafficking; he admitted, however, that he could not testify that appellant engaged in these activities as part of the gang.

Before Detective Garza testified in front of the jury, appellant objected to the testimony on the bases that there was no evidence that appellant was a gang member and that the evidence about his membership was more prejudicial than probative.[9] On appeal, he argues only that the evidence was more prejudicial than probative under rule of evidence 403 and that the trial court did not "conduct a balancing test" under that rule. *See* Tex. R. Evid. 403 ("Although relevant,

---

[8]Detective Garza had worked for several years in a gang unit, was assigned to the FBI Violent Gang Task Force, and attended monthly meetings about the trends and patterns of gang activity.

[9]Appellant did not object to the introduction of the photographs of his tattoos.

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."); *see also Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002) (stating that unfair prejudice occurs when the evidence has an undue tendency to suggest a decision on an improper basis); *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996) ("We have held that Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value."), *cert. denied*, 522 U.S. 832 (1997).

We cannot agree with appellant's arguments. First, we presume that the trial court conducted a rule 403 balancing test, and a silent record does not imply otherwise. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *see Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) ("[W]e have found no error when the judge simply listened to the defendant's objections, then overruled them."); *Moyer v. State*, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd) ("The trial court was not required to announce for the record that it has completed the balancing test in its own mind, but we may imply from the record that a proper balancing test was done.").

Second, appellant's brief does not explain how the gang-related evidence was unfairly prejudicial; instead, appellant seems to assume that all evidence of

gang involvement is highly prejudicial and should be automatically excluded.[10] The court of criminal appeals has upheld the introduction of gang affiliation testimony in the punishment phase of a trial. *See Jones*, 944 S.W.2d at 653; *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995) ("[G]ang membership is relevant character evidence and therefore admissible."). Our court and other intermediate appellate courts have also upheld the admission of such evidence. *Stevenson v. State*, 963 S.W.2d 801, 803 (Tex. App.—Fort Worth 1998, pet. ref'd); *see also Garcia v. State*, 239 S.W.3d 862, 866–67 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), *cert. denied*, 129 S. Ct. 505 (2008); *Aguilar v. State*, 29 S.W.3d 268, 270 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Chimney v. State*, 6 S.W.3d 681, 699 (Tex. App.—Waco 1999, pet. ref'd). Based on this authority, we cannot agree with appellant's contention that Detective Garza's testimony should have been excluded under rule 403 because it pertained to appellant's gang involvement. In other words, the evidence was not unfairly prejudicial merely because it linked appellant to the Truman Street Bloods gang, which, according to Detective Garza, commits various crimes. *See Beasley v. State*, 902 S.W.2d 452, 457 (Tex. Crim. App. 1995). We hold that the trial court did not abuse its discretion by admitting Detective Garza's testimony, and we overrule appellant's third point.

---

[10]Appellant summarily argues, "Testimony of the Appellant's alleged gang involvement was highly prejudicial. . . . The Trial Court abused its discretion by allowing the introduction of the gang information into evidence."

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 13, 2011