02-09-299-CR















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00299-CR

 


 
 
 NATHAN COLLINS
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM CRIMINAL
 DISTRICT COURT NO. 4 OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          In three points concerning the
admission of evidence against him, appellant Nathan Collins appeals his
conviction and twenty-five year sentence for aggravated robbery.  We affirm.

Background Facts

          On an early morning in March 2006,
Dwight Rochon and Deleon Rochon,
Dwight’s nephew, drove to a Fort Worth bank in a van.  Appellant drove to the same bank with Melinda
Lauderdale (appellant’s girlfriend) and Jarvis Glenn in Lauderdale’s car, and
he pulled up to an ATM.  Glenn got out of
the back seat of the car, approached the van and the ATM, and demanded Dwight’s
money.  Then, standing a few feet away
from Dwight, Glenn pointed a sawed-off shotgun at Dwight’s stomach and pulled
the trigger.  Appellant got out of the
car to pick up money that Dwight dropped after being shot.  Appellant then drove away.

          Fort Worth Police Department (FWPD) Officer
Bryan Gilliam received a dispatch call, went to the bank, and saw Dwight lying
on the ground. An ambulance took Dwight to a hospital, where he was
pronounced dead.

          By happenstance, FWPD Officer L.W.
Stout saw the car that appellant had driven away from the bank.  Officer Stout chased the car and found it near
duplexes on Fitzhugh Court, which is three blocks away from the bank.  An officer eventually found appellant
inside an attic of one of the duplexes after Lauderdale answered the door and
gave consent for a search of the duplex. Officer Stout took appellant, who
looked like he had recently used drugs, to the police station.[2]

          Lauderdale told the police about what
had happened and gave a written statement. 
Appellant also confessed to the crime.

          A grand jury indicted appellant with capital
murder and aggravated robbery.  The trial
court appointed counsel to represent appellant, and after the parties filed numerous
pretrial documents, he pled guilty to aggravated robbery in exchange for the
State’s agreement to waive capital murder.[3]  The trial court found appellant guilty, and a
few days later, a jury trial began on the issue of his punishment.[4]  After hearing evidence from several
witnesses, including appellant’s cousin and his mother, the jury assessed
punishment at twenty-five years’ confinement. 
Appellant filed notice of this appeal.

Admission of Evidence

          In three
points, appellant argues that the trial court erred by admitting evidence about
a previous robbery that Glenn had committed, Lauderdale’s fight with appellant’s
mother that occurred a couple of months before the robbery at the bank, and appellant’s
gang affiliation.

Standard of review and applicable law

          The code of criminal procedure
provides that after a defendant has been found guilty,

evidence may be offered by the state and the defendant as to any matter
the court deems relevant to sentencing, including but not limited to the prior
criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he
is being tried, and . . . any other evidence of an extraneous crime or bad act
that is shown beyond a reasonable doubt by evidence to have been committed by
the defendant or for which he could be held criminally responsible.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010); see Cox v. State, 931 S.W.2d 349, 356 (Tex. App.—Fort Worth 1996), pet. dism’d,
improvidently granted, 951 S.W.2d 5 (Tex. Crim. App. 1997); see also Taylor v. State, 970 S.W.2d 98,
102–03 (Tex. App.—Fort Worth 1998, pet. ref’d) (“[T]he
plain language of [article 37.07] supports a broad interpretation in favor of
the admissibility of all relevant . . . evidence, unless the probative value of
the evidence is substantially outweighed by its prejudicial effect.”).  Determining the evidence that the jury is
permitted to hear regarding a defendant’s punishment is more a question of
policy than of logic.  Eichelberger v. State, 232 S.W.3d 225, 228 (Tex.
App.—Fort Worth 2007, pet. ref’d); see Sunbury v. State, 88 S.W.3d 229,
233–34 (Tex. Crim. App. 2002) (adding that one of the policy goals is to
provide “complete information for the jury to tailor an appropriate sentence”).

          We review a trial court’s decision to
admit or exclude evidence regarding punishment for an abuse of discretion.  See Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); Ramos v. State, 45 S.W.3d 305, 310 (Tex.
App.—Fort Worth 2001, pet. ref’d).  In other words, if the trial court’s ruling
was at least within the zone of reasonable disagreement, we will not intercede.  Ramos,
45 S.W.3d at 310; Tow v. State, 953
S.W.2d 546, 548 (Tex. App.—Fort Worth 1997, no pet.).  The abuse of discretion standard applies to
questions of relevance.  Jones v. State, 963 S.W.2d 177, 182–83
(Tex. App.—Fort Worth 1998, pet. ref’d) (explaining
that “‘relevancy’ in the context of a punishment hearing is a normative process
to be employed by the fact finder and is not governed by rule [of evidence] 401”);
see also Hayden v. State, 296 S.W.3d
549, 552 (Tex. Crim. App. 2009) (“Borrowing from the definition of ‘relevant’
in Texas Rule of Evidence 401 is of little avail because the factfinder’s role during the guilt phase is different from
its role during the punishment phase.”).

Glenn’s previous robbery

          In his first point, appellant contends
that the trial court abused its discretion by admitting evidence about a previous
robbery that Glenn committed.  During a
hearing outside of the jury’s presence, Lauderdale explained that earlier on
the evening of the robbery at the bank, she saw Glenn commit another robbery
with the same sawed-off shotgun that he used to kill Dwight.  Lauderdale said that she told appellant about
Glenn’s robbery.  Appellant objected to
the relevance of Lauderdale’s testimony regarding Glenn’s previous crime, but
the trial court overruled the objection. 
Lauderdale testified about the same event in front of the jury.[5]

          In a conclusory
fashion, without citing any support from analogous cases, appellant contends
that this testimony was not relevant. 
But we hold that, under the broad standard for admissibility of
punishment evidence described above, the trial court did not abuse its
discretion by admitting the evidence. 
The evidence was relevant to appellant’s culpability in the robbery at
the bank because it reflected poorly on his decision to associate with Glenn
that day, especially when combined with other evidence showing appellant’s
knowledge that Glenn had previously shot someone.  In other words, as explained by the State,
“The jury could quite rightly find it helpful to learn that [a]ppellant knew (or should have known) what he was signing up
for when he set out to go to the bank with [Glenn].”  See Salazar
v. State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002) (explaining that
evidence related to the defendant’s personal responsibility and moral
culpability for an offense is relevant to the determination of punishment); Kos v. State, 15 S.W.3d 633, 641 (Tex.
App.—Dallas 2000, pet. ref’d).

          This is especially true when
considering appellant’s strategy of minimizing his role in the robbery to
request a lenient sentence.  During his
opening statement, appellant’s attorney stated, “I believe that the evidence is
going to show you that [appellant] merely drove the car and got out and got the
money.” And during his closing argument, appellant’s attorney similarly tried
to downplay appellant’s role in the robbery by stating that Glenn was the “guy
who got out and shot Dwight Rochon.  Jarvis Glenn committed the murder.  It was only after Dwight Rochon
collapsed in the grass that . . . [appellant] gets out of the car and runs to
pick up money, gets back in the car, and he drives away.”

          We hold that the trial court did not
abuse its discretion when it admitted the evidence about Glenn’s previous
robbery.  See Ramos, 45 S.W.3d at 310.  Thus, we overrule appellant’s first point.

Admission of photographs 

          In his second point, appellant argues that
other testimony from Lauderdale, in which she described assaults against her by
appellant and his mother and authenticated pictures related to the assaults,
was not relevant.  Lauderdale testified
that a couple of months before the robbery at the bank, she had a fight with
appellant.  Lauderdale said that as part
of the fight, appellant cut her finger and bruised her head, and then later, appellant’s
mother came to her home and beat her head.[6]  The State offered pictures related to the
fight into evidence, and then the following colloquy occurred:

          [DEFENSE COUNSEL:]  Ms. Lauderdale, I’m going to go over these
pictures with you one by one.  First, let
me ask you this:  These -- these were the
injuries that you received as the result of the fight with his mom, correct?

          A.  Yes, ma’am.

          . . . .

          Q.  Is there -- is this where the fight between
you and his mom took place?

          A.  It’s the home -- yes.

          Q.  Is this where it started?

          A.  Yes.

          Q.  Okay. 
What -- 

          A.  Me and him was fighting.

          . . . .

          [DEFENSE COUNSEL]:  Judge, I’m going to object to relevance of
these pictures.  In No. 97, the witness
stated she doesn’t know who is in this picture.

          No. 90 – let’s see.  No. 90, 91, 92, 93, 94, and 95, and are
pictures of -- of injuries that she received as a result of this incident with
his mother and also are pictures of the fight that she had between -- of the
spots where she had a fight between his mother and herself.  

          . . . .

          [THE STATE:]  Well, [Lauderdale], number one, you said all
of these pictures fairly and accurately depict you and parts of the scene that
-- that happened that night, December 27th of 2005, correct?

          A.  Yes.

          Q.  And, basically,
these are injuries that you received as a result of both of those assaults,
correct, the assault involving his mom and the assault involving [appellant],
correct?

          A.   Yes.

          Q.  Because you -- basically, you remember
telling 9-1-1 how [appellant] hit you up side your head?  Do you remember telling them that?

          A.  Yes.

Q.  Because that’s what he did, correct?

          A.  Yes.

          Q.  And these
injuries reflect -- and these pictures reflect all of those injuries, correct?

          A.  Yes, sir.

          [THE STATE]:  Your Honor, we move to enter.  

          [DEFENSE COUNSEL]:  Your Honor, his mother is not on trial.  My client is the only one on trial. . .
.  [Lauderdale] has clearly said on Voir
Dire with co-counsel that these photographs are photographs of injuries she
sustained from [appellant’s mother], not [appellant].  They are not relevant, and we object.  

          . . . .

          THE COURT:  I’ll
admit all of the exhibits.  [Emphasis
added.]

 

          On appeal, appellant contends that
Lauderdale’s testimony was irrelevant solely because it related to “an assault
by [appellant’s mother], not [appellant].” 
But even if we were to assume that pictures relating to an assault
by appellant’s mother were not relevant to appellant’s punishment, the excerpt
quoted above shows that the photographs concerned injuries caused by appellant
even if they also displayed injuries caused by his mother.  A defendant’s prior bad acts, whether
adjudicated or not, are relevant to the jury’s punishment decision.[7]  See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); Tow, 953
S.W.2d at 547–48.  Because the record
belies appellant’s assertion that the objected-to photographs related to bad
acts by his mother and not by him, we hold that the trial court did not abuse
its discretion by admitting the photographs, and we overrule his second point.

 

Appellant’s gang membership

          In his third point, appellant
complains about the trial court’s admission of evidence concerning his gang
membership.  At trial, the State called
FWPD Detective Armando Garza to testify as an expert about criminal street
gangs and appellant’s association with the Truman Street Bloods gang.[8]  Detective Garza said that appellant’s chest tattoos
included the words “STOP,” “SIX,” and “Truman St.,” which indicated that
appellant was a member of the Truman Street Bloods from the Stop Six
neighborhood.  Detective Garza also
explained that appellant had other tattoos indicating gang membership.  Detective Garza testified that the Truman
Street Bloods engaged in murders, aggravated assaults, and narcotics
trafficking; he admitted, however, that he could not testify that appellant
engaged in these activities as part of the gang.

          Before Detective Garza testified in
front of the jury, appellant objected to the testimony on the bases that there
was no evidence that appellant was a gang member and that the evidence about
his membership was more prejudicial than probative.[9]  On appeal, he argues only that the evidence
was more prejudicial than probative under rule of evidence 403 and that the
trial court did not “conduct a balancing test” under that rule.  See
Tex. R. Evid. 403 (“Although relevant, evidence may
be excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.”);
see also Vasquez v. State, 67 S.W.3d
229, 240 (Tex. Crim. App. 2002) (stating that unfair prejudice occurs when the
evidence has an undue tendency to suggest a decision on an improper basis); Jones v. State, 944 S.W.2d 642, 652
(Tex. Crim. App. 1996) (“We have held that Rule 403 requires exclusion of
evidence only when there exists a clear disparity between the degree of
prejudice of the offered evidence and its probative value.”), cert. denied, 522 U.S. 832 (1997).

          We cannot agree with appellant’s
arguments.  First, we presume that the
trial court conducted a rule 403 balancing test, and a silent record does not
imply otherwise.  Williams v. State, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); see Rojas v. State, 986 S.W.2d 241, 250
(Tex. Crim. App. 1998) (“[W]e have found no error when the judge simply
listened to the defendant’s objections, then overruled them.”); Moyer v. State, 948 S.W.2d 525, 531
(Tex. App.—Fort Worth 1997, pet. ref’d) (“The trial
court was not required to announce for the record that it has completed the
balancing test in its own mind, but we may imply from the record that a proper
balancing test was done.”).

          Second, appellant’s brief does not explain
how the gang-related evidence was unfairly prejudicial; instead, appellant
seems to assume that all evidence of gang involvement
is highly prejudicial and should be automatically excluded.[10] The
court of criminal appeals has upheld the introduction of gang affiliation
testimony in the punishment phase of a trial. 
See Jones, 944 S.W.2d at
653; Anderson v. State, 901 S.W.2d
946, 950 (Tex. Crim. App. 1995) (“[G]ang membership
is relevant character evidence and therefore admissible.”).  Our court and other intermediate
appellate courts have also upheld the admission of such evidence.  Stevenson
v. State, 963 S.W.2d 801, 803 (Tex. App.—Fort Worth 1998, pet. ref’d); see also Garcia v. State, 239 S.W.3d 862, 866–67
(Tex. App.—Houston [1st Dist.] 2007, pet. ref’d), cert. denied, 129 S. Ct. 505 (2008); Aguilar v. State, 29 S.W.3d 268, 270
(Tex. App.—Houston [14th Dist.] 2000, no pet.); Chimney v. State, 6 S.W.3d 681, 699 (Tex. App.—Waco 1999, pet. ref’d).  Based on
this authority, we cannot agree with appellant’s contention that Detective
Garza’s testimony should have been excluded under rule 403 because it pertained
to appellant’s gang involvement.  In
other words, the evidence was not unfairly prejudicial merely because it linked
appellant to the Truman Street Bloods gang, which, according to Detective
Garza, commits various crimes.  See Beasley v. State, 902
S.W.2d 452, 457 (Tex. Crim. App. 1995). 
We hold that the trial court did not abuse its discretion by admitting
Detective Garza’s testimony, and we overrule appellant’s third point.

Conclusion

          Having overruled all of appellant’s
points, we affirm the trial court’s judgment.

 

                                                                             PER
CURIAM

 

 

PANEL:  LIVINGSTON, C.J.; 
 
 
 
 
 
 DAUPHINOT and 
 
 
 
 
 
 MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 13, 2011











[1]See Tex. R. App. P. 47.4.





[2]Lauderdale
testified that appellant sold drugs. 
Appellant had previous drug convictions and was on community supervision
for a drug offense when he participated in the robbery.





[3]Aggravated
robbery is a first-degree felony that carries a maximum punishment of life in
prison.  See Tex. Penal Code Ann. §
12.32(a) (Vernon Supp. 2010), §
29.03(b) (Vernon 2003).





[4]Appellant
also pled guilty in front of the jury.





[5]Lauderdale
also said that months before the robbery at the bank, she learned that Glenn
had shot someone at a gas station, and she told appellant about that shooting
at that time.  Appellant does not
complain about the trial court’s admission of this testimony.





[6]Lauderdale
said that she hit appellant on the leg with a bar during the fight.





[7]Whether
an extraneous offense or bad act is established beyond a reasonable doubt is a
question of fact for the jury, not a preliminary question of admissibility for
the trial court.  See Mitchell, 931 S.W.2d at 953–54; Nanez v. State, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo
2005, no pet.).  The jury charge
instructed the jury, “You cannot consider the [extraneous crimes or bad acts]
testimony for any purpose unless you find and believe beyond a reasonable doubt
that the defendant committed such other acts . . . .”





[8]Detective
Garza had worked for several years in a gang unit, was assigned to the FBI
Violent Gang Task Force, and attended monthly meetings about the trends and
patterns of gang activity.





[9]Appellant
did not object to the introduction of the photographs of his tattoos.





[10]Appellant
summarily argues, “Testimony of the Appellant’s alleged gang involvement was
highly prejudicial. . . .  The Trial
Court abused its discretion by allowing the introduction of the gang
information into evidence.”