2-10-193-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00193-CR

 

 


 
 
 BOBBY REESE SKINNER
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 30th
District Court OF WICHITA COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Bobby Reese Skinner of possession of a controlled
substance—methamphetamine—in the amount of 400 grams or more and, upon his plea
of true to the enhancement paragraph, assessed his punishment at life
imprisonment and a $1,000 fine.  The trial court sentenced him accordingly.  In
a single issue, Appellant challenges the trial court’s admission into evidence of
the “fruits of the authorities’ warrantless search of another’s property when
they arrested [him].”  He specifically does not challenge his life sentence,
jury selection, or denial of his motion for new trial.  Because we hold that Appellant
has no standing to challenge the seizure of evidence from the trailer and
surrounding grounds owned by another and that he fails to show how the contents
of his wallet contributed to his conviction for mere possession, we affirm the
trial court’s judgment.

The
facts testified to at trial follow a familiar pattern.  An officer is driving
down the street in Wichita County, smells a certain chemical (here, ether)
emanating from a specific residence, and calls other officers to the scene.  They
knock on the door at midnight or much later, enter the residence, search it “for
officers’ safety” and “to prevent destruction of evidence.”  Only then do they apply
for a warrant and arrest the occupants for possession of the items discovered
in the initial warrantless entry.[2]

In
the case now before this court, the officer was driving down the street just
before midnight and smelled such an overpowering odor of ether that it pervaded
his vehicle through the vents, because the windows were closed.  He called
other officers to the scene, and the officers checked the house which they
believed the odor had come from but found it empty.  The officers therefore
concentrated on a “fifth-wheeler” trailer nearby.  They knocked on the door and
went inside the trailer “to prevent [Appellant] from destroying any evidence”
and “for officer’s safety” because ether is extremely volatile and could
explode at any minute.  They reasoned that it was necessary to enter the
trailer which smelled of ether for the safety of the officers, to prevent
destruction of drugs, and to protect the occupants of the trailer. 
Essentially, the officers created their own danger by entering the location of
the dangerous substance and also created the danger of destruction of
methamphetamine by making their presence known before seeking a warrant.

After
entering the trailer, the officers saw a tank of anhydrous ammonia, often used
for manufacturing methamphetamine, in plain view inside a duffle bag.  They put
Appellant on the ground, handcuffed him, and then searched the trailer for the
officers’ safety and to preserve evidence.  Only after handcuffing Appellant
and securing the premises by searching the trailer did they begin taking the
steps necessary to secure a warrant that allowed the search of anything and
everything and every person anywhere on the property.

The
methamphetamine was not found inside the trailer.  It was in a pitcher twenty
feet from the trailer and in plain view.

It
is interesting to note that no ether was found at the location, despite the
overpowering odor of ether that originally attracted the officer’s attention
and became stronger after the trailer door was opened.  After securing the
warrant, the officers searched a vehicle at the location and found Appellant’s
wallet with a receipt for a coffee grinder and coffee filters.

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.[3] 
We give almost total deference to a trial court’s rulings on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.[4] 
We must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.[5]

As
our sister court in Austin has explained,

Because the Fourth
Amendment protects persons against unreasonable searches of “their persons
[and] houses,” it is a personal right that must be invoked by an individual. 
But the extent to which the Fourth Amendment protects people may depend upon
where those people are.  The “capacity to claim the protection of the Fourth
Amendment depends . . . upon whether the person who claims the protection of
the Amendment has a legitimate expectation of privacy in the invaded place.”[6]

Appellant
argues that the trial court erred by refusing to suppress the fruits of the
search of a location belonging to another.  He also contends that the police
lacked probable cause and exigency.  Appellant does not specifically challenge
the seizure of the pitcher or its contents.  To the extent that Appellant
challenges the search of and evidence seized from the trailer and grounds, we
hold that he did not establish standing.  Appellant denied that he owned or
possessed the trailer or grounds in question, and he raises no suggestion of
his expectation of privacy there.  We note that Appellant also does not
challenge the sufficiency of the evidence to show that he exercised care,
custody, and control over the methamphetamine.[7] 
Indeed, he does not challenge the nexus between himself and any of the evidence
that he argues was improperly admitted.

Appellant
also denied at trial that the car in which his wallet was found belonged to him
but admitted that he had ridden in the car.  To the extent that his global,
general challenge to the evidence seized somehow includes an implicit challenge
to the admission of a receipt for a coffee grinder and coffee filters found in
the wallet, ingredients described at trial as objects commonly used in the
manufacture of methamphetamine, we note that the car was not searched until
after the warrant was executed.  Further, the basis of Appellant’s challenge to
all the evidence is the initial warrantless search of the trailer and grounds. 
Because Appellant has established no standing to challenge the warrantless
search of the trailer and grounds, he cannot rely on the alleged illegality of
that search to contest the search of the vehicle or his wallet.  And he raises
no explicit complaints about the search of the vehicle or his wallet.  Further,
given the evidence of methamphetamine and the manufacture thereof surrounding
Appellant at his arrest, we note that even if the seizure of the receipt was
illegal, a conclusion we do not reach, its admission did not contribute to
Appellant’s conviction or punishment for mere possession of methamphetamine.[8]

Because
Appellant has not established a legitimate expectation of privacy in the trailer,
surrounding grounds, or pitcher, he has no standing to contest the warrantless
search thereof.[9]  Because Appellant has no
standing to contest the search of the trailer, its grounds, or the pitcher, and
because he cannot rely on the alleged illegality of the search of the trailer
to challenge the search of the car and raises no explicit complaints about the
search of the car, we hold that the trial court did not err by denying his
motion to suppress and overrule his sole issue.

Having
overruled Appellant’s sole issue, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MCCOY, JJ.

 

WALKER
and MCCOY, JJ. concur without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2011









[1]See Tex. R. App. P.
47.4.





[2]See Eichelberger v.
State, 232 S.W.3d 225, 226 (Tex. App.—Fort Worth 2007, pet. ref’d); Pair
v. State, 184 S.W.3d 329, 332–33 (Tex. App.—Fort Worth 2006, no pet.); see
also Smith v. State, No. 02-09-00393-CR, 2011 WL 3672078, at *3–4
(Tex. App.—Aug. 18, 2011, no pet. h.).





[3]Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).





[4]Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).





[5]State v. Stevens,
235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123
S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004).





[6]Hespeth v. State,
249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref’d) (citations omitted).





[7]See Evans v. State,
202 S.W.3d 158, 162 (Tex. Crim. App. 2006).





[8]See Tex. R. App. P.
44.2(a).





[9]See Hespeth, 249
S.W.3d at 737.